# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 04-1592

**DEAN IWAMOTO**

**VERSUS**

**JAMES M. WILCOX, ET AL.**

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 01-C-4387-B
HONORABLE AARON FRANK MCGEE, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

James P. Doherty, Jr.
Andrus & Doherty
117 North Market Street
Opelousas, LA 70570
(337) 942-5645
COUNSEL FOR PLAINTIFF/APPELLEE:
Dean Iwamoto

Janice M. Reeves
Hannah, Colvin & Pipes, L.L.P.
2051 Silverside Drive, Suite 260
Baton Rouge, LA 70808
(225) 766-8240
COUNSEL FOR PLAINTIFF/APPELLEE:
Dean Iwamoto

**John L. Olivier**
**Olivier & Brinkhaus**
**Post Office Drawer E**
**Sunset, LA   70584**
**(337) 662-5242**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Buck Wheat Game Farm**
    **Wilcox Poultry Farm**
    **James Wilcox**
    **Trudy Cournyea, Indv.**

**Thomas M. Daigle**
**711 Johnston Street**
**Lafayette, LA   70501**
**(337) 234-4049**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Allan Wheeler**

AMY, Judge.

As the plaintiff attempted to feed livestock owned by defendants, his left foot was injured when one of the defendant's employees lowered a shredder attached to a tractor onto it. The plaintiff brought suit against the farm owners and the equipment operator for injuries he sustained in the accident, and was awarded $50,000.00 in general damages as well as special damages for past and future medical expenses. The farm owners appeal, asserting that they are not liable for the plaintiff's injuries or, alternatively, that the plaintiff should be assessed ninety percent comparative fault; they also challenge the amount of damages awarded. For the following reasons, we affirm.

### Factual and Procedural Background

The record indicates that James Wilcox and Trudy Cournyea owned a piece of property on which they operated Wilcox Poultry Farm, growing and selling fighting roosters. Mr. Wilcox and Ms. Cournyea employed Allan Wheeler to help care for the roosters. Mr. Wilcox and Mr. Wheeler both described the feeding routine for the farm, explaining that a tractor with an attached shredder was often used to assist feedings. Five-gallon buckets of feed were placed upon the shredder, which the tractor pulled along the Wilcox-Cournyea property to feed the roosters at various locations. At each stop, the workers would remove a bucket from the shredder and spread the feed.

Mr. Wilcox and Ms. Cournyea leased an attached portion of their property to Arthur Alzate, who also raised fighting roosters. Mr. Alzate employed the plaintiff, Dean Iwamoto, who lived on Mr. Alzate's leased property and cared for roosters owned by the two men (Mr. Alzate and Mr. Iwamoto). Mr. Iwamoto testified that on November 4, 2000, at approximately 2:30 p.m., he had finished feeding the roosters

he and Mr. Alzate owned and was helping Mr. Wheeler and another employee of Wilcox Poultry Farm to feed the farm's six hundred roosters.

Mr. Wheeler stated that he retrieved the tractor, with the shredder loaded with buckets of feed, and drove it a short distance with the shredder lifted approximately twelve inches off of the ground. He said that, as he approached his first location, he saw Mr. Iwamoto and another worker waiting to assist him; he testified that he saw Mr. Iwamoto begin walking toward the tractor as he made a large "U-turn" to position the tractor before stopping. Mr. Wheeler testified that he turned the tractor's engine off and then engaged the hydraulics to lower the shredder. Mr. Iwamoto testified that, upon seeing Mr. Wheeler turn off the engine, he approached the shredder to retrieve a bucket and begin feeding the roosters. Mr. Iwamoto said that he walked up close to the shredder so that he could lean in to lift the bucket off of the shredder. As he reached for the bucket, Mr. Wheeler unwittingly lowered the shredder, which came to a rest on top of Mr. Iwamoto's foot. Mr. Wheeler, hearing the screams of Mr. Iwamoto and the other employee, raised the shredder and released Mr. Iwamoto's foot. Mr. Iwamoto was immediately taken to the hospital, where he received extensive treatment for the injuries he sustained to his left foot.

The plaintiff brought the following suit against Mr. Wilcox, Ms. Cournyea, Wilcox Game Farm and Mr. Wheeler, seeking damages for the injuries he incurred in the accident. The case proceeded to a bench trial, wherein the trial court assigned Mr. Wheeler eighty percent comparative fault and the remaining twenty percent to Mr. Iwamoto. The court found that Mr. Wheeler was an employee of Wilcox Poultry Farm and thus, Mr. Wilcox and Ms. Cournyea are vicariously liable for his negligence. The plaintiff was awarded general damages in the amount of $50,000.00,

2

future medical expenses of $5,000.00, and past medical expenses of $10,688.00. Mr. Wilcox and Ms. Cournyea (hereinafter "the defendants") appeal, asserting that the trial court erred in assessing any liability to the defendants, and arguing alternatively that the plaintiff should have been allocated a higher percentage of comparative fault. The defendants also assert that the damage award was improper, alleging that the amount of general damages awarded was excessive and that medical damages should have been limited to compensation for injuries to the defendant's left foot.

**Discussion**

*Liability and Allocation of Fault*

The defendants assert that the plaintiff was not paying attention as he worked near the shredder and that the cause of his injuries was his own negligence in sticking his feet underneath it. In the alternative, the defendants allege that the plaintiff should be assessed ninety percent comparative fault for the accident.

Generally, an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. through Dept. Of dev. & trans.*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

In the present case, the trial court stated the following in its reasons for judgment:

> The evidence submitted to the Court substantiates that at the time of the accident Mr. Allan Wheeler was operating a tractor to which was attached a shredder, . . . upon which was situated anywhere from five to seven 5-gallon buckets of special feed for fighting roosters. Mr. Wheeler had traveled a short distance with the tractor and shredder [the shredder being up off the ground approximately twelve inches] in effect intending to move same from location to location for the convenience of feeding between 400 and 500 roosters. When Mr. Wheeler reached his first location he knew that the plaintiff, Dean Iwamoto, was nearby and was going to assist him in the feeding process. . . . When Mr. Wheeler reached that location, by his own testimony, he pushed in the clutch placing the tractor in neutral then turned off the tractor and then

engaged the hydraulics so as to lower the shredder. During this entire procedure he never looked to his rear to see if anyone was near the shredder. As fate would have it, at the moment that he lowered the shredder [by engaging the hydraulics] the plaintiff, Mr. Iwamoto, was attempting to remove one of the 5-gallon buckets of feed [weighing between 20 and 25 pounds] resulting in the shredder crushing his left foot. At the time of the incident Mr. Iwamoto was gratuitously assisting Mr. Wheeler and was wearing "flip flops" on his feet. It is also noted that at the time these two gentlemen had two unrelated employers. It is also to be noted that during the process the shredder blade was never engaged - - the shredder at the time really being utilized as a sort of "trailer" to carry the feed and not to cut the grass.

. . . [T]here is not doubt but that the great major cause of this accident, i.e., negligence, lies with Mr. Allan Wheeler in failing to exercise an appropriate lookout before lowering the shredder hydraulically. However, at the same time there is little question but that the plaintiff, Mr. Iwamoto, should have been more careful in not allowing his feet to be placed under the shredder while it was in the up position and it was also not terribly smart of him to be doing this type of work using "flip flops" rather than work boots.

The trial court then determined that, based on its determination of the facts as noted above, Mr. Wheeler was assigned eighty percent comparative negligence for the accident and the plaintiff was assigned the remaining twenty percent.

Based on our review, the record supports the trial court's finding that the defendants were liable for the plaintiff's injuries. Mr. Wilcox, Ms. Cournyea and Mr. Wheeler all testified that the shredder was used to aid in transporting the feed throughout the area where the roosters were kept. There was also testimony submitted by the plaintiff and by defense witnesses that the shredder had to be raised when the tractor was in motion while carrying seed, or else the ground contact would cause the buckets to spill. The plaintiff stated that he did not warn Mr. Wheeler that he was approaching the shredder because Mr. Wheeler usually did not lower the shredder during feedings because the tractor was continuously being relocated to the various feeding locations. Mr. Wheeler stated that sometimes he lowered the

4

shredder in between feedings, and sometimes he did not. Although he did not have a set procedure for lowering the shredder between feedings, Mr. Wheeler stated multiple times during his testimony that he did not turn around or provide a warning before he lowered the shredder on the occasion in which the plaintiff was injured. It is important to note that Mr. Wheeler also testified that he had seen the plaintiff waiting for him to bring the feed, and had even seen him walking toward the shredder to grab a bucket.

Our review of the record, and particularly the testimony of the parties, reveals no manifest error in the trial court's determination that the defendants were negligent and liable, to some degree, for the accident and the plaintiff's resulting injuries. Consequently, we consider the defendants' argument that, if they were in any way negligent, the allocation of comparative negligence fault against them should be reduced to ten percent.

> The allocation of fault between comparatively negligent parties is a finding of fact. *Sims v. State Farm Automobile Ins. Co.*, 98-1613 (La.3/2/99), 731 So.2d 197, 199. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Duncan v. Kansas City Southern Railway Co.*, 00-0066 (La.10/30/00), 773 S.2d 670, 680. Accordingly, an appellate court may only reallocate fault if it finds the trial court was clearly wrong or manifestly erroneous in its allocation of fault, even if the reviewing court would have decided the case differently had it been the original trier of fact. *Hebert v. Brown Bottling Group, Inc.*, 98-0924 (La.10/30/98), 719 So.2d 1043, 1046.

*Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138, p. 14 (La. 5/20/03), 851 So.2d 959, 968.

Accordingly, we must look at the conduct of Mr. Wheeler and Mr. Iwamoto to determine whether the trial court erred in its allocation of fault. We have already reviewed the testimony regarding Mr. Wheeler's conduct, including his own

admissions that he did not turn around to look behind him, nor did he warn those around him, before lowering the shredder. We must also consider whether the plaintiff's own conduct contributed to his injuries. Mr. Iwamoto testified that he saw Mr. Wheeler turn the tractor's engine off and thought that Mr. Wheeler was not going to lower the shredder. He said that he was looking at the shredder and the buckets on top of it as he walked over, and that he did not warn Mr. Wheeler that he was approaching, even though he stated that he had to get very close to the shredder in order to lean over it to pick up a bucket. Although he testified that he did not think that it was safe to work around a tractor with "flip flop" sandals on, the plaintiff stated that he often wore them around the farm area.

The trial court clearly stated its basis for its allocation of fault between the parties. After reviewing the record, we find no manifest error in the trial court's determination that the plaintiff should be apportioned twenty percent fault for his injuries and that the remaining fault should be allocated to the defendants.

*Damages*

The defendants next assert that the trial court erred in awarding the plaintiff future medical expenses of $5,000.00 and past medical expenses of $10,688.05. The defendants allege that the plaintiff should only have been awarded damages for the injury to his left foot, and not for treatments related to the plaintiff's right hip, back or neck. The defendants also assert that the general damage award of $50,000.00 is excessive, and contest any award for future medical expenses.

Damage awards should be determined based on the facts or circumstances specific to the case. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). The burden is on the plaintiffs

6

to prove special damages by a preponderance of the evidence. *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128. "An award of special damages is reviewed pursuant to the manifest error standard of review, unlike a general damage award which is reviewed pursuant to the abuse of discretion standard." *Id*, at 1131. Because the trial court is afforded great discretion in determining the proper damage award, "[t]he role of an appellate court in reviewing an award of damages is not to decide what it considers to be an appropriate award, but rather to review the trier of fact's discretion to determine whether that discretion was abused." *Hornsby v. Bayou Jack Logging*, 03-1544, p.5 (La.App. 3 Cir. 5/5/04) 872 So.2d 1244, 1248, *writ granted*, 04-1297 (La. 10/14/04), 883 So.2d 1040.

In its reasons for judgment, the trial court provided the following explanation for its damage award:

> As a result of the accident, Mr. Iwamoto sustained reasonably serious injuries to his left foot, resulting in his having to be rushed to Doctors [sic] Hospital in Opelousas where he was seen in the Emergency Room and then transferred by Med Express Ambulance to UMC [University Medical Center] in Lafayette. While in Lafayette he was hospitalized and underwent surgery identified as an "open reduction internal fixation" surgery, which was designed to assist with the big toe (first metatarsal) of his left foot. Medical evidence substantiates treatment for a fair amount of time after his discharge from UMC on an out-patient basis, it substantiates continued medical care at W.O. Moss Regional Medical Center in Lake Charles, Moss Bluff Chiropractic Clinic, and Dr. Elemer Raffai, an orthopaedic surgeon, in Eunice, St. Landry Parish, Louisiana. The evidence also substantiates that as a result of the injury and surgery the plaintiff will experience future permanent pain, a small amount of future medical care and medication, and has a permanent eight percent (8%) total body disability which will prohibit him from engaging in any kind of heavy labor but which does not stop him from performing reasonably light work. There is also a claim made for other ailments dealing with the neck, back, shoulder, and hip which is alleged to have come about as a result of the unusual gait occasioned by the plaintiffs' injury and disability. While the evidence is not overwhelming with regards to those matters, nevertheless, the Court is satisfied that the evidence does substantiate a connexity between those complaints and the abnormal gait which was created by

the permanent disabling injury. Common sense tells us that this is basically what happens when the body, in an attempt to compensate for an injury to one lower extremity, starts to put pressure on the other otherwise healthy lower extremity. Although connexity has in the opinion of the Court been established, the Court does not take same into any really serious consideration in its award of damages because it is felt that the evidence is lacking on the part of the plaintiff relative to any substantial degree of seriousness as relates thereto.

Finally, the court notes that there is lay testimony which substantiates that perhaps the plaintiff compensated and adjusted to his injuries in that while he does not train and fight roosters full time anymore, nevertheless, he is still able to engage in the sport as a spectator. Likewise, there is no evidence of loss of income with regards to the limitations that he might have relating to the training and fighting of the roosters.

Our review of the record indicates that the trial court's reasons adequately summarize the medical records and testimony presented at trial. We note that the plaintiff testified that he continued to have pain in his foot daily, which increases with certain activities including standing for long hours. He also stated that he had to stop his work caring for roosters because of his injuries, although he still attended the rooster fights as a spectator. The defense presented the testimony of two witnesses who challenged the amount of time that the plaintiff had actually used his crutches and stated that the plaintiff had participated in rooster fights since the accident, which he had suggested in his testimony that he was physically incapable of doing.

The trial court's reasons for judgment demonstrate that the court considered the defendants' argument that only the injury to the plaintiff's left foot should have been included in the medical expense award. Although the trial court noted that the evidence linking the pains in the plaintiff's hip, shoulders and back to his foot injury was not "overwhelming[,]" the court found that the plaintiff had presented sufficient evidence to warrant an award for the related medical expenses incurred by the plaintiff. The trial court's award for medical expenses is consistent with the evidence

in the record, and we find no manifest error in the awards for the plaintiff's medical expenses.

The defendants also allege in one of their assignments of error that "no award should have been made for future medical expenses[,]" although they provide no argument regarding their challenge to the award in their appellate brief. However, our review of the record indicates that Dr. Raffai testified in his deposition that the plaintiff would need continued care including anti-inflammatory and pain medications; Ketokam gel prescriptions; intermittent cortisone shots, which cost approximately $210.00 each; physical therapy visits, and; orthotic inserts for his shoes. Consequently, we find no error in the trial court's award of $5,000.00 to the plaintiff for future medical expenses.

The trial court also awarded the plaintiff $50,000.00 in general damages, which the defendants argue is excessive. Based on the medical testimony given, the injuries that the plaintiff suffered caused him to endure pain and suffering that continued through the trial. Further, Dr. Raffai testified he would endure pain for the remainder of his life. After careful review of the totality of evidence presented to the trial court on Mr. Iwamoto's damages, we find the trial court's general damage award of $50,000.00 did not constitute a clear abuse of its discretion.

For the all of the foregoing reasons, the defendants' assignments regarding the general and special damages awards are without merit.

**DECREE**

For the foregoing reasons, the judgment of the trial court in favor of the plaintiff, Dean Iwamoto, is affirmed. All of the costs of this proceeding are assigned to the appellants, James Wilcox and Trudy Cournyea.

**AFFIRMED.**