# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-0143


STEPHEN P. BASCO

VERSUS

LIBERTY MUTUAL INSURANCE COMPANY, ET AL.


************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 209,398,
HONORABLE F. RAE SWENT, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.


**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**


George A. Flournoy
Flournoy & Doggett
Post Office Box 1270
Alexandria, LA  71309
(318) 487-9858
COUNSEL FOR PLAINTIFF/APPELLANT:
       Stephen P. Basco

Michael H. Rubin
Juston M. O'Brien
McGlinchey Stafford, PLLC
14th Floor, One American Place
Baton Rouge, LA  70825
(225) 383-9000
COUNSEL FOR DEFENDANTS/APPELLEES:

**Liberty Mutual Insurance Co., et al.**

**Edward E. Rundell**
**Michael J. O'Shee**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, LA  71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Liberty Mutual Insurance Co., et al.**

PETERS, J.

This litigation arises from a two-vehicle accident which occurred on Interstate 10 (I-10) in Baton Rouge, Louisiana, on September 24, 2001. The driver of one of the vehicles, Stephen P. Basco,[1] brought a suit for damages against Alma Hutson, the driver of the other vehicle; Express Courier Services, Inc., Ms. Hutson's employer; and New Hampshire Insurance Company, the employer's liability insurer.

At the jury trial on the merits, Ms. Hutson's fault in causing the accident was not at issue. Instead, the jury was required only to determine whether Mr. Basco sustained injuries in the accident and, if so, the amount of damages he should be awarded for those injuries. The jury answered the injury interrogatory in the affirmative and awarded Mr. Basco general and special damages in certain categories while denying him recovery in others. The trial court rendered a judgment incorporating the jury's verdict.

In appealing the judgment below, Mr. Basco does not dispute the sufficiency of the amounts actually awarded. Instead, he asserts that the jury's verdict is so internally inconsistent that it constitutes an abuse of discretion and that he should be awarded damages for those categories the jury rejected. For the following reasons, we find merit in Mr. Basco's appeal. Accordingly, we reverse the jury's rejection of his claim for damages for future loss of enjoyment of life, future medical expenses, future loss of earnings, and future loss of fringe benefits, and we render judgment awarding damages for each of those categories.

**DISCUSSION OF THE RECORD**

Mr. Basco was employed as a relay truck driver for Interstate Brands Corporation (hereinafter referred to as Holsum Bakery), operating out of its facility

---

[1]The original suit included a claim by Barbara Basco, Stephen P. Basco's wife, and included other defendants. However, the only parties before us in this appeal are those listed herein.

in Alexandria, Louisiana. On Monday, September 24, 2001, having completed a delivery to Baton Rouge while on his daily route for Holsum Bakery, Mr. Basco was traveling west on I-10 to reload in Lafayette. Ms. Hutson was also traveling west on I-10. As Mr. Basco's eighteen wheeler and Ms. Hutson's Mitsubishi automobile were traveling side by side, Ms. Hutson allowed her automobile to drift into Mr. Basco's lane of travel, resulting in an impact in which the hood of her automobile became trapped under Mr. Basco's trailer. When Mr. Basco realized what was happening, he immediately engaged both his hand and foot brakes to effect an emergency stop. Mr. Basco testified that, as he engaged the braking system, his trailer bounced on the highway, dislodging the Hutson vehicle, and jerked him around inside the cab.

Initially, Mr. Basco believed that he had suffered no physical injuries in the accident, although he was decidedly upset from the experience. However, according to Mr. Basco, as he proceeded on to Lafayette following the accident, his neck began to hurt and his arms began to burn. When Mr. Basco returned to Alexandria that same evening, his employer required him to immediately see Dr. Brian Jobe, an Alexandria occupational medicine physician, in connection with his complaints. Dr. Jobe concluded that Mr. Basco had sustained a cervical strain in the accident, prescribed medication, and restricted Mr. Basco to sedentary work.

Mr. Basco returned to limited duty on Wednesday and completed the work week, but in severe pain. Having continued to experience severe pain, Mr. Basco presented himself to the emergency room at Christus St. Frances Cabrini Hospital in Alexandria on Saturday. According to Mr. Basco, the emergency room physician released him, advising him to refrain from working for a few days.

2

Nevertheless, Dr. Jobe released Mr. Basco to return to full duty approximately two weeks after the accident. Mr. Basco continued to work until mid-December of 2001, at which time his employer placed him on light duty because he informed his supervisor that he could no longer lift his left arm and could not fully perform his employment duties.

On December 17, 2001, Mr. Basco saw Dr. Riad Hajmurad, an Alexandria neurologist, with complaints of severe pain in his neck and upper extremities. Mr. Basco had come under the care of Dr. Hajmurad over two years before the September 24, 2001 accident in connection with numbness and tingling in his upper extremities. Diagnostic testing performed prior to the accident revealed a herniated cervical disc at C5-6, but with no radiculopathy. In fact, diagnostic testing performed just under four months prior to the accident revealed no changes from previous testing that might suggest a worsening of Mr. Basco's condition. However, diagnostic testing performed after the accident revealed the presence of radiculopathy. Further, prior to the accident, Dr. Hajmurad had treated Mr. Basco conservatively with medication, having determined that Mr. Basco was not a candidate for surgery. However, by May of 2002, Dr. Hajmurad was of the opinion that Mr. Basco's condition required surgery. Dr. Hajmurad was also of the opinion that the September 24, 2001 accident had worsened Mr. Basco's preexisting condition.

In the meantime, two orthopedists evaluated Mr. Basco in February of 2002. Specifically, Dr. Gordon Gidman, a Lafayette orthopedist, saw Mr. Basco at the request of Holsum Bakery for the purpose of providing the employer with a second opinion concerning what effect that the accident might have had, if any, on Mr. Basco's preexisting herniated disc. After examining Mr. Basco and evaluating Dr.

3

Hajmurad's test results, Dr. Gidman likewise concluded that Mr. Basco's complaints of neck and left arm and hand pain, tingling, and burning had been exacerbated by the September 24, 2001 accident. Further, Dr. Clark Gunderson, a Lake Charles orthopedic surgeon, evaluated Mr. Basco and agreed with Dr. Hajmurad's medical findings as well as his conclusions that Mr. Basco's preexisting cervical condition had been exacerbated by the accident and that this exacerbation had resulted in the need for surgical intervention.

Accordingly, Dr. Gunderson performed an anterior cervical discectomy and fusion on Mr. Basco in July of 2002. Dr. Gunderson followed Mr. Basco's post-operative recovery, and, when he last saw the patient on June 20, 2003, Mr. Basco was still having neck, shoulder, and arm pain. At that time, Dr. Gunderson was of the opinion that Mr. Basco had reached maximum medical improvement, that further surgery was not an option, and that Mr. Basco's decreased range of motion and weakness in his left arm and hand resulted in a permanent impairment of ten to fifteen percent. Dr. Gunderson determined that Mr. Basco's disability precluded him from performing any overhead work, lifting anything over forty pounds, and returning to any type of employment involving driving a truck.

Thereafter, Mr. Basco began treating with Dr. Robert K. Rush, an Alexandria occupational medicine physician. In his initial examination of Mr. Basco in October of 2003, Dr. Rush confirmed the findings of the other physicians. He continued to treat Mr. Basco, having seen him as late as one week prior to trial. At that time, Mr. Basco still had neck and upper extremity complaints as well as headaches. Dr. Rush was also of the opinion that Mr. Basco had reached maximum medical improvement and that he would be limited to light-duty work for the remainder of his life.

4

Additionally, the lay testimony and Mr. Basco's work history illustrate and support the disability and causation findings of these physicians. Mr. Basco and his wife testified that his postaccident pain and discomfort was significantly worse than his pre-accident condition. Also, Mr. Basco, his wife, and his brothers testified that Mr. Basco had enjoyed squirrel and deer hunting and fishing prior to the accident and that after the accident his participation in these activities had been greatly reduced. Mr. Basco altogether ceased participating in other activities he had previously enjoyed, such as dancing and volunteering with the fire department. Moreover, Mr. Basco had been employed with Holsum Bakery for nineteen years at the time of the accident, and there is no evidence that he had any problems performing his duties prior to the accident. In fact, Mr. Basco's shipping supervisor at Holsum Bakery, who was not even aware that Mr. Basco had a preexisting condition, testified that prior to the accident Mr. Basco exhibited no physical impairment that kept him from performing his duties and that Mr. Basco even volunteered to help others at the loading dock when the need arose. Mr. Basco's shipping supervisor noticed a marked difference following the accident, as Mr. Basco would hold his arm and neck and carry his arm "like as if he had it in a sling without a sling." Additionally, following the accident and Mr. Basco's relegation to light-duty work, Holsum Bakery terminated his employment on April 12, 2002, because it had no light-duty work available. Currently, Mr. Basco's neck and arm continue to hurt on a daily basis, he cannot move his neck or lift his arm, and he has to hold his arm in a certain position to relieve some of the pain.

Nevertheless, contrary to the findings of the physicians who actually treated Mr. Basco and contrary to the lay testimony and history presented, Dr. Donald Smith,

a Shreveport neurosurgeon, found no evidence of any measurable injury to Mr. Basco as a result of the accident. Dr. Smith, who examined Mr. Basco at the request of the defendants for the purpose of this litigation, also found no anatomical basis for the left extremity sensory losses Mr. Basco exhibited in the physical examination. However, Dr. Smith acknowledged that he did not fully review the medical records provided to him and conceded that he had previously expressed the opinion that the September 24, 2001 accident had worsened or aggravated Mr. Basco's preexisting condition. He also conceded that Dr. Hajmurad, having treated Mr. Basco both before and after the accident, would have been in a better position to have determined the effect of the accident on Mr. Basco's condition. Interestingly, Dr. Smith offered no medical basis for disagreeing with the opinions of Dr. Hajmurad, Dr. Gidman, and Dr. Gunderson concerning the worsening of Mr. Basco's condition. Despite his opinion regarding causation, Dr. Smith was nevertheless of the opinion that Mr. Basco had sustained a permanent physical impairment of twenty-five percent in connection with his surgery.

The defendants also presented the testimony of Timothy Harrigan, an expert in biokinesiology, mechanical engineering, and biomechanics, in an effort to demonstrate that the accident was a minor one that could not have caused Mr. Basco's injuries. Also contrary to the findings of the physicians who actually treated Mr. Basco and the lay testimony and history presented, Mr. Harrigan concluded that the forces exerted on Mr. Basco during the accident could not have caused Mr. Basco's injuries, as the forces were significantly less severe than those exerted by a cough, by a sneeze, or by simply plopping in a chair. However, Mr. Harrigan did concede that,

6

if Dr. Jobe had found that Mr. Basco had a neck strain and soreness within hours of the accident then the accident probably caused those conditions.

Following the presentation of the evidence, the jury answered the injury interrogatory in the affirmative and the quantum interrogatory in the following manner:

2. What amount do you find will compensate the plaintiff, Stephen P. Basco, for any injury or loss he sustained as a result of the incident in question?

    (A)  Physical and mental pain and suffering

|  |  |
|---|---|
| (1) Past | $ 10,000 |
| (2) Future | $ 140,000 |

    (B)  Loss of enjoyment of life

|  |  |
|---|---|
| (1) Past | $ 4,000 |
| (2) Future | $ 0 |

    (C)  Medical expenses

|  |  |
|---|---|
| (1) Past | $ 36,897 |
| (2) Future | $ 0 |

    (D)  Loss of earnings

|  |  |
|---|---|
| (1) Past | $ 57,060 |
| (2) Future | $ 0 |

    (E)  Loss of fringe benefits

|  |  |
|---|---|
| (1) Past | $ 7,170 |
| (2) Future | $ 0 |

The trial court rendered a judgment incorporating the jury verdict. Mr. Basco has appealed that judgment only to the extent of challenging the jury's failure to make awards for all but one of the categories for future damages. The defendants have neither appealed nor answered the appeal.

**OPINION**

Review of a jury verdict is often made more difficult because, unlike a bench trial,[2] the evidentiary record contains nothing to establish the exact factual findings by the jury or the reasoning behind an apparent factual finding or award. However, in the matter before us, the overall factual conclusions of the jury are made clear by the awards rendered.

It is clear from the jury's verdict that the jury found that the September 24, 2001 accident aggravated or worsened Mr. Basco's preexisting condition, rejecting the conclusions of the defendants' expert witnesses to the contrary. Thus, causation of Mr. Basco's current condition is not at issue. It is also clear that the jury found that the injuries Mr. Basco sustained in the accident resulted in pretrial pain and suffering and loss of enjoyment of life, necessitated pretrial medical expenses, and resulted in pretrial loss of earnings and fringe benefits. What is not clear from the jury verdict is its reasoning regarding future damages. Had the jury awarded no amounts for future damages, then we could have concluded that the jury found that Mr. Basco's pain, suffering, impairment, and economic losses were minimal and temporary and did not extend past the date of trial. However, the jury's generous award for future pain and suffering, juxtaposed with its relatively insignificant award for past pain and suffering, indicates that it concluded that Mr. Basco's pain and suffering is currently more severe than before trial or will extend for a significant period of time into the future or both. That being the case, in light of the uncontradicted evidence regarding Mr. Basco's disability and economic losses, the only possible issue with which the jury could have reasonably grappled was the *extent* of Mr. Basco's future losses, not

---

[2]Even without formal reasons for judgment, the record of a bench trial ordinarily contains comments or rulings from the bench suggesting the trial court's findings on points at issue.

8

whether he sustained any future losses, in the categories it denied.  It is from this posture that we begin our analysis.

### *Future Loss of Enjoyment of Life*

Loss of enjoyment of life is a component of general damages.  *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La. 2/18/05), 896 So.2d 31.  It is well settled that, in reviewing an award of general damages, the role of an appellate court is to review the exercise of discretion by the trier of fact.  *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).  Importantly, on review, an appellate court should rarely disturb an award of general damages because "the discretion vested in the trier of fact is 'great,' and even vast." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).  It is only when the trier of fact has abused its much discretion that the appellate court may disturb the award, but then only to the extent of lowering it to the highest point or raising it to the lowest point which was reasonably within the discretion of the trier of fact.  *Id.*  However, this principle of appellate review applies only when a litigant "questions the adequacy of a monetary award in a case which is otherwise uncomplicated by factual errors relating to the cause or duration of the plaintiff's disability."  *Mart v. Hill*, 505 So.2d 1120, 1128 (La.1987).  More specifically, the principles stated in *Coco* and reiterated in *Youn* "are not applicable when a res nova review of quantum must be made to compensate a plaintiff for damages which the trial court did not believe were causally related to the accident." *Id.*  In the instant case, Mr. Basco is not questioning the adequacy of a monetary award for future loss of enjoyment of life; instead, he is questioning the jury's failure

to make any award for that item of damages. Thus, should we find error, we are not bound by the highest/lowest constraints in recognition of the jury's discretion.

We also recognize that, as pointed out in *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, an award in one category of damages does not automatically require an award in others. In that case, a jury awarded the plaintiffs medical expenses they incurred but failed to award general damages. The supreme court refused to hold that, as a matter of law, such a verdict must always be erroneous. Rather, the supreme court stated that "it would be inconsistent with the great deference afforded the factfinder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous." *Id.* at 76. Instead, the reviewing court "must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion." *Id.* If the reviewing court reaches that conclusion, it must then "conduct a *de novo* review of the record." *Id.*[3]

In the instant case, although not involving the failure to award special but not general damages, the jury has rendered a verdict that is so internally inconsistent that it cannot be reconciled. Specifically, in making a generous award for future pain and suffering while at the same time making a blanket denial of awards in every other category for future loss, the jury abused its discretion.

---

[3]We note that the supreme court in *Wainwright* equates the failure to award any damages in that case as a question of abuse of discretion. However, it is clear from the decision that the underlying analysis requires an evaluation of the jury's findings of fact under a manifest error or clearly wrong standard. If the factual findings are manifestly erroneous or clearly wrong, such that the plaintiff is entitled to an award for a particular category of damages, and the jury fails to make such an award, the reviewing court is to perform a *de novo* review as contemplated by *Mart*, 505 So.2d 1120, and not simply to raise the award from zero to the lowest acceptable award as contemplated by *Coco*, 341 So.2d 332, and *Youn*, 623 So.2d 1257. Therefore, despite the use of the language concerning abuse of discretion, we find no divergence in the decision from the preexisting jurisprudential rules of review.

Initially, we note that the third circuit has recognized that not only is loss of enjoyment of life a component of general damages, it is also a separate element unto itself. *See Andrews v. Mosley Well Serv.*, 514 So.2d 491 (La.App. 3 Cir.), *writ denied*, 515 So.2d 807 (La.1987).[4] The jury acknowledged the separate nature of that element of damages in its award of $4,000.00 for past loss of enjoyment of life.

Further, we note that damages for loss of enjoyment of life are recoverable upon proof that the party's lifestyle has been detrimentally altered or that the injured party has been forced to give up activities because of his injury. *Simms v. Progressive Ins. Co.*, 38,804 (La.App. 2 Cir. 9/29/04), 883 So.2d 473, *writ denied*, 04-2871 (La. 1/8/05), 893 So.2d 78. The undisputed medical evidence was that Mr. Basco has a permanent residual impairment, with Dr. Gunderson opining that Mr. Basco has a permanent impairment of ten to fifteen percent and Dr. Smith, the physician who examined Mr. Basco on behalf of the defendants, opining that Mr. Basco has a permanent impairment of twenty-five percent—Dr. Smith simply questioned causation, which question the jury answered in favor of Mr. Basco and which determination is not at issue on appeal. Additionally, the undisputed lay testimony was to the effect that Mr. Basco has limitations in his neck and arm movements, that his hunting and fishing activities have been greatly reduced, and that his dancing and volunteer activities have altogether ceased. The jury chose to credit this undisputed medical and lay testimony, as evidenced by its award for past loss of enjoyment of life, and we find no manifest error in this determination. Having credited this testimony, the jury was clearly wrong in failing to find that the loss of

---

[4]Four of the five circuit courts of appeal in this state have recognized loss of enjoyment of life as a separate element of damages. *See Matos v. Clarendon Nat'l Ins. Co.*, 00-2814 (La.App. 1 Cir. 2/15/02), 808 So.2d 841; *Simms v. Progressive Ins. Co.*, 38,804 (La.App. 2 Cir. 9/29/04), 883 So.2d 473, *writ denied*, 04-2871 (La. 1/8/05), 893 So.2d 78; *Andrews*, 514 So.2d 491; *Poche v. Allstate Ins. Co.*, 04-1058 (La.App. 5 Cir. 3/1/05), 900 So.2d 55.

enjoyment of life extended into the future, as there was no evidence presented to the contrary and as the jury acknowledged that Mr. Basco will continue to have pain and suffering into the future. Accordingly, we reverse the rejection of this element of damages and award Mr. Basco $40,000.00 for future loss of enjoyment of life.

In reversing the jury and rendering an award, we are not unmindful of our decision in *Myers v. Broussard,* 96-1634 (La.App. 3 Cir. 5/21/97), 696 So.2d 88, which the defendants urge mandates that we affirm the jury's zero award for future loss of enjoyment of life in that the $140,000.00 award for future physical and mental pain and suffering is a lump sum award sufficient to compensate Mr. Basco for future loss of enjoyment of life. In other words, according to the defendants, viewing the damage award as a whole, it is sufficient to compensate Mr. Basco for his future loss of enjoyment of life even though the award did not include a separate award for future loss of enjoyment of life.

Without questioning at this juncture the approach we took in *Myers*, we note that it is distinguishable from the facts of this case. In *Myers*, the jury awarded the plaintiff $300,000.00 for "[p]ain, suffering, and disability, both physical and mental (past, present and future)," but made no award for "[l]oss of enjoyment of life." *Id.* at 95. On appeal, the defendants asserted that the general damage award was excessive, and the plaintiff answered the appeal, asserting that she should be given an award for loss of enjoyment of life. Thus, this court was called upon to determine whether the plaintiff received an excessive award for physical and mental pain, suffering and disability and, at the same time, to determine whether the jury erred in failing to award her damages for loss of enjoyment of life.

12

As to the plaintiff's argument in *Myers*, we recognized the separate nature of the loss-of-enjoyment-of-life element, but further noted that "even though awards for certain elements of damages may be inadequate or excessive, if the total sum awarded is neither inadequate nor excessive, then the award should not be disturbed on appeal." *Id.* at 97. In doing so, we concluded that the $300,000.00 sum awarded by the jury adequately compensated the plaintiff for all general damages she sustained. We arrived at this conclusion in *Myers* in the context of a plaintiff whose credibility was questionable. While the plaintiff testified as to her loss of enjoyment of life, there was evidence in the record that she traveled twice to Gulf Shores, Alabama, without stopping, and she even admitted to flying nonstop to Turkey and participating in sightseeing excursions while there. Thus, in *Myers*, unlike in the instant case, the evidence on the loss-of-enjoyment-of-life issue was conflicting. Due to the conflicting evidence in *Myers*, the jury could have reasonably concluded that, while the plaintiff did sustain pain and suffering, she failed to prove more probably than not that she suffered loss of enjoyment of life, as her actions indicated otherwise. Further, in *Myers*, unlike in the instant case, the jury categorically declined to award damages, whether past or future, for loss of enjoyment of life, evidencing a consistency in the jury's thought process for that element of damages.

Implicit in the *Myers* decision was this court's recognition that the positions of both the defendants and the plaintiff had merit. That is to say, the $300,000.00 award was excessive and the failure to award anything for loss of enjoyment of life was error. Instead of reducing the $300,000.00 award and then awarding a separate amount for loss of enjoyment of life which, if combined with the reduced award totaled $300,000.00, the court recognized that the separate elements were adequately

13

compensated for by the total general damage award.  In the instant case, the excessiveness of the award for future physical and mental pain and suffering is not at issue.  That is to say, by not questioning that award on appeal, the litigants acknowledge that it is sufficient *for that element of damages.*  Were we to apply *Myers* as suggested by the defendants, we would be giving no credit to that award.  In fact, we would be considering the sufficiency of an award to the benefit of a defendant where the defendant has not raised that issue on appeal.

### *Future Medical Expenses*

In a suit for damages, the trier of fact should make damage awards based on the facts or circumstances specific to the case.  *Iwamoto v. Wilcox*, 04-1592 (La.App. 3 Cir. 4/6/05), 900 So.2d 1047.  Future medical expenses are a component of special damages.  *Thibeaux*, 883 So.2d 1128.  The plaintiff bears the burden of proving special damages by a preponderance of the evidence.  *Iwamoto*, 900 So.2d 1047.  Importantly, an appellate court reviews an award of special damages pursuant to the manifest error standard of review, unlike an award of general damages, which an appellate court reviews under the abuse of discretion standard.  *Id.*  In meeting his burden of proof on the issue of future medical expenses, the plaintiff must show that, more probably than not, these expenses will be incurred and must present medical testimony that they are indicated and the probable cost of these expenses.  *Veazey v. State Farm Mut. Auto Ins.*, 587 So.2d 5 (La.App. 3 Cir. 1991).

The medical evidence establishes that Mr. Basco will suffer intermittent pain in the neck, shoulder, and left arm for the remainder of his life and that he will simply have to live with this pain, controlled only by medication.  Dr. Rush suggested that Mr. Basco would need Bextra or a similar medication to control the inflammation,

14

soreness, and pain associated with his condition "from now on," and the record establishes that a month's supply of Bextra costs $115.99. Mr. Basco argues that we should annualize that cost over his life expectancy and award that amount for this loss.

Given the jury's award for future pain and suffering and the medical testimony indicating that Mr. Basco's only hope of relief from the pain and suffering is medication, the evidence reveals that the medication is indicated. Further, the evidence establishes the future cost of this medication. While the evidence indicated that Mr. Basco's pre-accident condition was also controlled by the use of similar pain medication on an as-needed basis, the evidence is clear that the accident caused an aggravation of his condition, which aggravation the jury has recognized in its verdict. Accordingly, it was manifest error for the jury to fail to award any damages for future medical expenses.

If we were to accept that Mr. Basco must take Bextra daily and that his life expectancy is 28.6 years,[5] the total cost of future medication is $39,807.77. However, that does not take into account the discounted value of the amount, the fact that Mr. Basco was taking some medication before the accident, and the fact that he does not require daily medication at this time. Taking those factors into account, we find that the appropriate award for future medical expenses is $10,000.00.

### Future Loss of Earnings and Fringe Benefits

Loss of earnings and loss of fringe benefits are both recognized as proper elements of damages. *Goodwyne v. People's Moss Gin, Inc.*, 96-1340 (La.App. 3 Cir. 4/30/97), 694 So.2d 1101, *writ denied*, 97-2041 (La. 11/21/97), 703 So.2d 1309.

---

[5]The reason for this assumed life expectancy will be explained in the section of this opinion addressing the issue of future loss of earnings and fringe benefits.

15

Further, they are special damages. *Thibeaux*, 883 So.2d 1128. As is the case with other damages, the plaintiff bears the burden of proving his claim for these elements. *Driscoll v. Stucker*, 04-0589 (La. 1/19/05), 893 So.2d 32. "In determining the proper amount to be awarded, the trier of fact should consider the injured person's age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and inflation." *Myers*, 696 So.2d at 98.

It is undisputed that Mr. Basco has sustained a permanent disability, is currently limited to light-duty work, and is no longer able to perform his employment with Holsum Bakery. At the time of trial, he was a forty-nine-year-old high school graduate whose only meaningful job experience was as a truck driver for Holsum Bakery, which job he had performed for nineteen years before the accident. Following termination of his employment with Holsum Bakery due to his limitations caused by the accident, Mr. Basco began working for his brother, who owns a small carpet cleaning business. Mr. Basco's job duties in his brother's business include preparing estimates on fire and water damage jobs, supervising workers who actually performed the cleaning activities, and running errands. He earns $8.50 per hour and receives no fringe benefits. Mr. Basco's hourly rate at the carpet cleaning business was less than he had made at Holsum Bakery, and he had received fringe benefits at Holsum Bakery. Mr. Basco was still employed by his brother when the case was tried.

Both sides presented vocational rehabilitation testimony regarding Mr. Basco's prospects for future employment. Mr. Basco presented the testimony of Bob Gisclair, a licensed rehabilitation counselor, who was of the opinion that Mr. Basco's current employment was the best that he could perform given his work limitations.

16

The defendants presented the testimony of Harris Rowzie, a vocational rehabilitation counselor, who testified that Mr. Basco was employable as a service writer at an automobile shop or as a parts clerk for an equipment company. According to Mr. Rowzie, either of these positions would pay Mr. Basco the same salary/fringe benefits as or greater than he received at Holsum Bakery. Mr. Rowzie based these job prospects on discussions he purportedly had with Jerry Christopher, the service manager at Walker Automotive in Alexandria, and Frank Voelker of E. S. Voelker John Deere Equipment Company of Alexandria.

However, both Mr. Christopher and Mr. Voelker testified at trial and flatly contradicted Mr. Rowzie's testimony. Not only did Mr. Christopher not remember speaking with Mr. Rowzie, but he also testified that, given Mr. Basco's experience of nineteen years as a truck driver with no computer skills and no customer relations skills, he would not hire him as a service writer. Mr. Voelker acknowledged talking to Mr. Rowzie for about five minutes before Mr. Rowzie testified, but Mr. Voelker asserted that Mr. Rowzie never asked him to describe the job skills required of a parts clerk and did not ask him whether he would consider hiring Mr. Basco. Mr. Voelker testified that he would not hire a person as a parts clerk who could not lift more than forty pounds and who had no computer skills. Equally important, Mr. Voelker testified that, even if Mr. Basco were qualified for the position, the starting pay would be only $7.00 per hour, less than he was earning at the time of trial. Mr. Gisclair testified that he was aware of the respective duties of a service writer and parts clerk and that it was his opinion that Mr. Basco was not qualified for either job.

Mr. Rowzie also suggested that Mr. Basco could work as a dispatcher for a truck line or concrete company but gave few details of the work requirements for these jobs.

17

Additionally, he admitted that he had not been furnished with the reports of Dr. Rush and was not aware that the doctor had restricted Mr. Basco to light-duty work. He also acknowledged that he had previously opined that if Mr. Basco was limited to light duty, his employment with his brother's business was the best he could do.

As with the other zero awards previously discussed, the jury's award of zero for future lost earnings and future fringe benefits cannot be explained. It suggests that the jury believed that Mr. Basco would not suffer any future loss of earnings/fringe benefits and that somehow immediately after trial he would be employable at a position that would pay him the equivalent of or more than that which he was paid at Holsum Bakery and that his capacity to earn in the future had not diminished at all. However, in light of the undisputed medical testimony, the undisputed lay testimony concerning Mr. Basco's former and current employment, Mr. Gisclair's testimony, and the serious flaws in Mr. Rowzie's testimony, the jury was clearly wrong to find that Mr. Basco sustained no future loss of earnings/fringe benefits. Moreover, under the specific facts of this case, the jury's failure to award future loss of earnings/fringe benefits is clearly inconsistent with its awards for past loss of earnings/fringe benefits. Accordingly, we reverse the jury's failure to make awards for those categories of damages.

We now conduct a *de novo* review of the record regarding the calculation of these categories of damages. Two experts testified regarding Mr. Basco's loss of past and future income and fringe benefits. Dr. G. Randolph Rice, chairman and professor emeritus of the Louisiana State University Department of Economics in Baton Rouge, testified for Mr. Basco, and Dan M. Cliffe, a certified public accountant specializing in economic analysis and loss, testified for the defendants. Both men based their

18

calculations on the assumption that Mr. Basco was incapable of earning any more than his current salary at his brother's carpet cleaning business.

In reaching his conclusions, Dr. Rice used a life expectancy of 28.98 years and a work-life expectancy of 13.58 years and applied a net discount rate of 1.25%. Calculating thus, Dr. Rice concluded that Mr. Basco's future earning capacity loss would be $317,904.00. He based these conclusions on his projection of annual earnings of $43,707.45 had Mr. Basco remained employed with Holsum Bakery, less a present annual income of $18,175.00 with his brother's carpet cleaning business. Recognizing that Mr. Basco's current employment offered no fringe benefits, Dr. Rice's loss of future fringe benefits calculation was $144,054.00.

Mr. Cliffe used a life expectancy of 28.6 years and a work-life expectancy of 12.75 years and applied a net discount rate of 1.5%. Mr. Cliffe's calculations also differed from Dr. Rice's in that he set Mr. Basco's base wage at Holsum Bakery at $38,070.00, deducting for the significant overtime pay Mr. Basco had received, and he calculated Mr. Basco's current wages at the carpet cleaning business to be $18,684.00. Calculating thus, Mr. Cliffe concluded that Mr. Basco's future loss of earnings would be $227,435.00 and loss of fringe benefits would be $149,220.00.

As set forth above, both Dr. Rice and Mr. Cliffe based their calculations on basically the same set of assumed facts, which included the fact that Mr. Basco's permanent disability precluded him from returning to his former employment and that his current income was the most he could expect in the future. The evidence establishes that these assumptions were indeed proven facts. The difference in future loss of earnings (which each expert described as loss of earning capacity) is traceable to the different Holsum Bakery wage base each used. The lower figure of Mr. Cliffe

19

was based on Mr. Basco's actual income at Holsum when he left, while Dr. Rice's calculation took into account pay increases that other relay drivers had enjoyed since Mr. Basco stopped working there as well as union contract expectations for future pay increases.

We note that the jury awarded Mr. Basco $57,060.00 in past loss of earnings, the exact amount of Mr. Cliffe's calculations in that regard, and neither party has raised any argument on appeal that the award was either excessive or inadequate. Mr. Cliffe's calculations of both past and future earnings losses were based on the same underlying factual data and as a result were both lower than the calculations of Dr. Rice for those losses. We will accept the jury's reliance on Mr. Cliffe's calculations for earnings losses and find that an award of $227,435.00 for future loss of earnings and $149,220.00 for future loss of fringe benefits will do substantial justice, and we render judgment in those amounts.

## DISPOSITION

For the foregoing reasons, we reverse the trial court judgement insofar as it fails to award damages for future loss of enjoyment of life, future medical expenses, future loss of earnings, and future loss of fringe benefits. We render judgment awarding the plaintiff, Stephen P. Basco, the sum of $40,000.00 for future loss of enjoyment of life, $10,000.00 for future medical expenses, $227,435.00 for future loss of earnings, and $149,220.00 for future loss of fringe benefits, together with legal interest from date of judicial demand until paid in full. We affirm the remaining portions of the judgment and tax all costs of this appeal to the defendants, Alma Hutson, Express Courier Services, Inc., and New Hampshire Insurance Company.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

20