ROLAND L. BELSOME, Judge.
| jThis appeal is taken from a judgment rendered in favor of Touro Infirmary dismissing the plaintiffs claims for medical malpractice with prejudice.

Facts

On November 19, 2004, Mae Brown, a 220 lb. female paraplegic, was admitted to Touro for rehabilitation reconditioning following a T-6 resection procedure. While a patient in Touro’s rehabilitation unit, Ms. Brown suffered a transverse fracture to her right tibia. The plaintiff contends that the incident which caused the injury occurred on December 14, 2004.
There are two versions of the December 14, 2004 incident, in which Ms. Brown was found on the floor. According to Gail Thomas, CNA[1], she was passing Ms. Brown’s room and witnessed her falling from her wheelchair. She immediately went to assist and gently lowered her to the floor on her buttocks with her legs extended in front of her. Ms. Thomas then called for assistance and Ms. Brown was transferred to her bed. Ms. Thomas claimed that she reported the |2incident to the charge nurse Patricia Pickens, who recorded it in Ms. Brown’s chart.
The notation in Ms. Brown’s medical chart suggests a different scenario and reads:
Reported by staff that patient had to be lowered to floor while attempting to transfer from wheelchair to bed. Reported that legs were extended in front of patient while lowered to the floor on buttocks. Reported that patient was assisted back to wheelchair and into bed with additional help from staff. Did not initially complain of pain but now voices complaint of pain to the area just below right knee with palpation. No complaints of pain with range of motion.
Sometime thereafter Ms. Brown complained of severe leg pain and was initially treated with an ice pack and placed in an immobilizer. Later, an x-ray revealed that Ms. Brown had suffered a fractured tibia. In late December 2004, Ms. Brown had surgery to repair the fracture.

Procedural History

Ms. Brown filed a complaint with the medical review panel on July 18, 2005, claiming that she suffered a traumatic fracture while being transferred without sufficient assistance from her wheelchair to her bed. A medical review panel convened on August 27, 2007, and unanimously found that Touro had not breached the standard of care in conducting the transfer. Subsequently, a petition for damages was filed in Civil District Court for the Parish of Orleans.[2] The trial court conducted a one day bench trial on May 23, 2011 and rendered judgment in favor of Touro on July 5, 2011, finding that the plaintiff failed to establish that Touro had breached the applicable standard of care. This appeal followed.
On appeal the plaintiff asserts three assignments of error: 1) the trial court committed manifest error in finding that Touro complied with its own standard of care; 2) the trial court committed legal error in failing to apply the standard of care |¡¡as *664 defined by Touro’s nursing staff, Gail Thomas; and 3) the trial court committed legal error by not qualifying Elizabeth Lambeth, RN as an expert.

Standard of Review

In Louisiana it is well established that a plaintiff asserting a medical malpractice claim must establish, by a preponderance of the evidence, the applicable standard of care, the breach of that standard of care, and a causal connection between the breach of care and the patient’s injury. Pfiffner v. Correa, 94-0924, 34-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, 1233. According to the trial court’s judgment and reasons for judgment it determined that Ms. Brown was injured during a transfer from her wheelchair to her bed. The trial court further found that Touro’s experts and the Medical Review Panel established the standard of care and that the plaintiff failed to prove a breach of that standard. This Court reviews the trial court’s findings of fact under a manifestly erroneous/clearly wrong standard. Arias v. Stolthaven New Orleans, L.L.C., 08-1111, p. 5 (La.5/5/09), 9 So.3d 815, 818.

Discussion

At trial, four witnesses were qualified as experts to testify as to the standard of care for patient transfers in a rehabilitation unit. Dr. William Knight, the one expert that was not employed by Touro but was a member of the medical review panel, explained that the rehabilitation staff generally works as a team in assessing a patient’s abilities and determining their course of treatment. He referenced Ms. Brown’s medical chart which indicated that on the day of the incident Ms. Brown had an FIM[3] of 3 or 4 and the transfer orders called for one person with a slide board. Nonetheless he reiterated the opinion of the medical review panel stating |4that a one person transfer without a slide board would be appropriate for a patient with a T6-7 spinal cord injury.
Nurse Pickens, the charge nurse that documented Ms. Brown’s chart after the incident, was also qualified as an expert. During Nurse Pickens’ testimony she admitted that she did not have any independent recollection of the incident, but interpreted the note she had drafted into Ms. Brown’s chart to mean that Gail Thomas had unsuccessfully attempted a transfer of Ms. Brown from the wheelchair to the bed. She further testified that prior to making an entry into the chart she would consult with the staff member and patient involved in the incident.
She stated that the standard of care regarding the transfer of a 220 pound paraplegic that functioned at Ms. Brown’s level from a wheelchair to a bed is by. a one person transfer with a sliding board. When asked if that was the procedure followed by Ms. Thomas on the day of the incident, she simply replied that she would have to rely on her note. The note made no mention of a slide board.
Touro presented two additional experts, Dr. Farokh Contractor, Ms. Brown’s treating physician at Touro, and Nurse Susan Greco.[4] All but Dr. Knight testified that the standard of care for a rehabilitation patient with a FIM of 3 or 4 is a one person transfer with a sliding board. That testimony was consistent with the orders for transfer documented in Ms. Brown’s medical records.
*665 After the one day trial, the trial court adopted the medical review panel’s standard of care and further found that the plaintiff had failed to establish that Touro deviated from that standard of care. In its reasons for judgment the trial court specifically stated, “The Medical Review panel unanimously found ... the attempt to transfer the patient from the wheelchair to the bed with the assistance of one person and without the use of a sliding board is appropriate with regard to a T6-7 paraplegic.” On the record before this Court, we cannot find a reasonable Rbasis for such a conclusion. Ms. Brown’s medical chart clearly indicated that a slide board be used when transferring her to and from the bed or the wheelchair. Three of the experts that testified worked for Touro and cared for Ms. Brown during her rehabilitation stay. They all established the standard of care for Ms. Brown given her weight and disability rating. Thus, we find the trial court was manifestly erroneous in adopting the standard of care set forth by Dr. Knight and the medical review panel.
We find that the plaintiff established the standard of care, the breach of that standard and the causal connection of the breach to the injury by a preponderance of the evidence. A review of the record establishes that there was a failed transfer by Ms. Thomas that was conducted without the use a slide board, which by the testimony of experts, Nurse Pickens, Dr. Contractor, and Nurse Greco was a breach of the standard of care employed by Tou-ro. We further find that the Ms. Brown’s fall to the floor was the only traumatic event that occurred prior to her complaining of severe pain in her leg. Accordingly, the trial court’s judgment is reversed.

Damages

Upon determining that the trier of fact is clearly wrong, the appellate court is authorized to render any judgment which is just, legal and proper. LSA-C.C.P. Art. 2164. “Courts of appeal may award damages when the trial court initially rejects plaintiffs demands and where the record contains sufficient proof of damages.” Broussard v. Med. Protective Co. 06-331, p. 4 (La.App. 3 Cir. 2/21/07), 952 So.2d 813, 818. When the initial award of damages is made at the appellate level, the award should reflect an amount which is just compensation for the damages revealed by the record. Id.
RMS. Brown’s daughter, Patricia Wilson, testified at trial regarding her mother’s injury. Mrs. Wilson was her mother’s caregiver and stated that in late December 2004, when she was bathing her mother she removed the immobilizer from her leg and noticed extreme swelling, and her mother complained of severe pain. Her mother’s condition caused Mrs. Wilson to bring her to the hospital. At the hospital she met the orthopedic surgeon Dr. Linda Thompson. After examining Ms. Brown, Dr. Thompson admitted her to the hospital, and Ms. Brown was scheduled for surgery. Mrs. Wilson claimed that even though the surgery was successful, her mother complained of pain in her leg for several months during- her recovery and occasionally complained of discomfort through 2007.
Dr. Thompson, Ms. Brown’s orthopedic surgeon, testified that Ms. Brown came to her with x-rays that indicated she had a fractured right tibia. She further stated that Ms. Brown complained of terrible pain in her right leg. Ms. Brown was admitted into the hospital and underwent surgery the following day. The surgery to correct the fracture called for a large metal plate and screws to hold the bone in place. Dr. Thompson saw Ms. Brown in her office approximately two weeks following the surgery to remove the stitches. At that *666 visit the doctor noted that Ms. Brown had no pain and was doing well.
In accordance with the evidence presented in the record, we find just compensation for Ms. Brown’s injury and subsequent pain and suffering to be $65,000.00 in general damages and $24,183.00 in special damages[5].

Conclusion

For the reasons discussed, we reverse the trial court’s judgment dismissing the plaintiffs claims and render judgement in favor of Patricia Wilson on behalf of Mae D. Brown and against Touro Infirmary in the amount of $65,000.00 in general damages and $24,188.00 in special damages with interest from date of |7the filing of the complaint with the medical review board until paid. Additionally, each party is to bear their own costs.
REVERSED AND RENDERED
LOVE, J., concurs in the results.

. Ms. Thomas was a certified nurse assistant at the time of the incident.

. Ms. Brown predeceased the filing of this lawsuit. Patricia Wilson filed the suit on behalf of her deceased mother.

. FIM is the abbreviation for Functional Independence Measure and is a scale used to assess a patient's physical and cognitive disability.

. At the time of the incident, Nurse Greco was the director of rehabilitation nursing for Touro.

. The plaintiff introduced and entered into evidence documented medical expenses in the amount of $24,183.00.