# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 14-1026

MARK BALDWIN

VERSUS

CLEANBLAST, LLC

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2013-10251
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.

**REVERSED AND REMANDED.**

J. Daniel Rayburn, Jr.
Susan A. Daigle
Daigle Rayburn, LLC
Post Office Box 3667
Lafayette, LA   70502
(337) 234-7000
COUNSEL FOR DEFENDANT/APPELLEE:
     CleanBlast, LLC

Patrick H. Hufft
Hufft & Hufft, APLC
635 St. Charles Avenue
New Orleans, LA   70130
(504) 522-9413
COUNSEL FOR PLAINTIFF/APPELLANT:
     Mark Baldwin

**K. Adam Avin**
**Irpino, Avin, Higgin & Hawkins**
**2216 Magazine Street**
**New Orleans, LA   70130**
**(504) 525-1500**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Mark Baldwin**

**AMY, Judge.**

The plaintiff was assigned to the M/V *Brody Paul* to work as a sandblaster/painter on various rigs and platforms located in the navigable waters of the Gulf of Mexico. After allegedly sustaining injuries in a fall, the plaintiff sought compensation pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law. His employer filed a motion for summary judgment, seeking a determination that the plaintiff was not a seaman given the circumstances of his assignment and, therefore, ineligible to recover as such. The trial court initially denied the motion, but later entered summary judgment in favor of the employer after supplementation of evidence. The plaintiff appeals. For the following reasons, we reverse the summary judgment and remand for further proceedings.

### Factual and Procedural Background

The plaintiff, Mark Baldwin, was an employee of CleanBlast, LLC, at the time of the alleged underlying, July 16, 2012 accident. By the petition instituting this matter against CleanBlast, the plaintiff asserted that, in his capacity as a sandblaster/painter, he was assigned to the M/V *Brody Paul*, which was "working and operating in the navigable waters of the Gulf of Mexico." The record establishes that, at the time of the accident, the CleanBlast crew was providing its services to Tennessee Oil and Gas Company and working on that company's rigs and platforms situated in the Gulf. The plaintiff alleged that the accident occurred after he and the crew were instructed to blast risers owned by Tennessee Oil and Gas and were not provided with the proper equipment. In that attempt, the plaintiff stated, he "fell backward suffering severe and disabling injuries including, but not limited to, injuries to his back and neck."

The plaintiff suggested that, as his Jones Act employer, CleanBlast "violated its non-delegable duty to provide [him] a safe working environment." He sought various damages for the employer's "vessel negligence pursuant to the Jones Act and/or general maritime laws of the United States for negligently causing, creating, and/or allowing the existence of one or more unreasonably dangerous conditions, which caused or contributed to [his] incident and injuries."

In response, CleanBlast filed a motion for summary judgment asserting that "there is no genuine issue as to any material fact that plaintiff is not a Jones Act seaman, and that he has no claim pursuant to Rule 905(b) of the Longshore and Harbor Workers' Compensation Act, since defendant did not own or operate the vessel at issue in this matter." In its attached memorandum, CleanBlast noted, among other things, that it did not own the vessel to which the plaintiff was temporarily assigned; that the alleged accident occurred, not on the vessel, but on a Tennessee Oil and Gas platform; and that the plaintiff's work was largely spent on the platform compared with what it termed a minimal amount of time aboard the vessel. It noted that the vessel-bound work was performed in order to set up and gather the tools needed for the platform work, and that the plaintiff "never participated in the navigation of the M/V Brody Paul or the maintenance of the vessel engines, deck, or hull." In support, CleanBlast attached the plaintiff's application for employment, certain records evidencing the details of the plaintiff's work day (i.e. whether the work was spent in service of the vessel or whether it was spent on platform-based activities), affidavits of the plaintiff and CleanBlast employees, and the plaintiff's deposition, in which he described his work in furtherance of the Tennessee Oil and Gas contract. Following a hearing, the trial court denied the CleanBlast motion on the seaman status issue. However, the trial

court granted the motion for summary judgment with regard to the plaintiff's "905(b) claim pursuant to the Longshore Harbor and Workers' Compensation Act," thereby dismissing the plaintiff's claim in that regard.

Thereafter, CleanBlast filed another motion for summary judgment on the Jones Act seaman status issue, noting that the trial court had permitted the parties to further depose the plaintiff regarding his recollection of time spent in service of the vessel versus time spent working aboard the platform. CleanBlast suggested that this subsequent deposition indicated that the plaintiff spent less than thirty percent of his time working in service of the vessel. It therefore argued that the plaintiff could not establish seaman status as a matter of law due to jurisprudence indicating that thirty percent is an important threshold for determining whether a plaintiff is a seaman for purposes of recovery. Following a hearing on this second motion, the trial court entered summary judgment on the seaman status in favor of CleanBlast, dismissing the plaintiff's Jones Act claim as well as the claim for maintenance and cure.[1] Although the judgment reserved any claim that the plaintiff had under the Longshore and Harbor Workers' Compensation Act, it dismissed the matter, as all claims asserted in the suit had been resolved.

The plaintiff appeals the entry of summary judgment asserting that the trial court: 1) improperly weighed evidence to determine that no genuine issue of

---

[1] In ruling at the hearing, the trial court explained:

> I think, you know, whether or not this is a jury question or not, I think ultimately it becomes, if we were at trial, it would be a request for a motion for a directed verdict on Seaman status, which would be the same thing I would be doing. I just do not believe in this case that this gentleman is a Seaman, based on many of the things that were set forth both with regards to the appropriation of time spent on the vessel while calculating during his full employment [sic]. But most of all, for me, I just do not believe the job in which he was doing based on what I've learned in this case, was in the furtherance of the service of the vessel. On that, the Court would grant the Motion for Summary Judgment at this time.

3

material fact exists; 2) erred in considering the motion for summary judgment when it had previously denied the summary judgment and no meaningful evidence had been presented in the second filing; and 3) erred in finding as a matter of law that the appellant does not have seaman status.

**Discussion**

*Motion for Summary Judgment*

The summary judgment procedure of La.Code Civ.P. art. 966(A)(2) "is designed to secure the just, speedy, and inexpensive determination of every action" except in certain designated cases. It is favored and is to be construed to accomplish those ends. *Id.* The trial court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

Further, and although La.Code Civ.P. art. 966(C)(2) expressly provides that "[t]he burden of proof remains with the movant[,]" the movant's burden does not require him to negate all essential facts of the adverse party's claim if the movant will not be required to bear the burden of proof at trial. Instead, the movant must "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* In turn, thereafter, if "the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

On appeal, the reviewing court considers a trial court's grant or denial of a motion for summary judgment under the same criteria that governed the trial

4

court's consideration of the motion and pursuant to the *de novo* standard of review. *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Louisiana Ins. Guar. Assoc.*, 09-23 (La. 6/26/09), 17 So.3d 350.

*Jones Act Seaman Status*

The plaintiff filed this matter seeking recovery pursuant to the Jones Act and/or general maritime laws. As posed by the motion for summary judgment, the critical inquiry for review is whether a genuine issue of material fact exists with regard to the plaintiff's Jones Act seaman status, or lack of such status. In *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355, 115 S.Ct. 2172, 2183 (1995), the United States Supreme Court observed that the Jones Act, itself, "does not define the term "seaman" and therefore leaves to the courts the determination of exactly which maritime workers are entitled to admiralty's special protection." Noting a history of the courts' difficulties in articulating criteria for determining seaman status, the Supreme Court set forth two requirements for a determination of seaman status. *Id.* First, and referencing its earlier decision in *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807 (1991), the Supreme Court explained that the employee's duties must contribute to the function of the vessel or to the accomplishment of its missions. *Id.* Secondly, the Supreme Court determined that a seaman must have a connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both duration and nature. *Id.*

As explained in *Chandris*, 515 U.S. 347, the intent of the first element is to exclude those individuals who do not perform the ship's work from the protection of the Jones Act. The Supreme Court noted, however, that this threshold requirement is broad, and that all those who work at sea in the service of a ship are eligible for seaman status. *Id.*

With regard to the second element, i.e., that a seaman has a connection to a vessel in navigation that is substantial in both duration and nature, the Supreme Court observed that it separates maritime employees who are entitled to Jones Act protection from those who are land-based with only a transitory sporadic connection with a vessel in navigation. *Chandris*, 515 U.S. 347. In this latter, non-protected instance, the land-based worker is not regularly exposed to the perils of the sea. *Id.* As further explained in *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 117 S.Ct. 1535 (1997), for the substantial-connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This emphasis gives "substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees." *Id.* at 555.

On review of this summary judgment, we take note of the fact that "[t]he seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" *Papai*, 520 U.S. at 554 (quoting *Wilander*, 498 U.S. at 337).

In this case, the focus of the CleanBlast's motion for summary judgment is on the second element. In its memorandum in support of the second motion, it suggested that "[t]here can be absolutely no dispute that plaintiff did not have a connection to any vessel during his employment with CleanBlast that was substantial in terms of duration and nature. Therefore, any claims pursuant to Jones Act or for maintenance and cure fail." Central to CleanBlast's claim is its

6

contention that the plaintiff spent less than thirty percent of his total employment time aboard the M/V *Brody Paul*.[2] By its account, CleanBlast contends, he spent "at most" 28.65 percent of his time aboard the vessel. This figure is critical to the inquiry, CleanBlast contends, because of the Supreme Court's explanation in *Chandris*, 515 U.S. at 371, that in determining the temporal element inherent in the substantiality requirement, an appropriate rule of thumb is that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."

While noting that the plaintiff's testimony indicated that he did, in fact, spend less than thirty percent of his time in the service of the vessel, we do not find that figure (even as factually disputed as it is between the parties) dispositive in this case. Instead, *Chandris*, 515 U.S. at 371, described the thirty-percent figure, not only as a rule of thumb, but as "no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases." Notably, the inquiry into seaman status is fact specific and dependent on the nature of the vessel and the employee's precise relation to it. *Id.* The Supreme Court further advised that "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict." *Id.* at 371. Considering the parties' submissions, however, we do not find that the work, as described by the plaintiff, had a "clearly inadequate temporal connection" to the M/V *Brody Paul* so as to support only one reasonable view.

---

[2] In this regard, CleanBlast suggests that even the plaintiff's account of his hours aboard the vessel versus work performed on the platform indicates that only 28.65% of his time was spent in service of the vessel. CleanBlast suggests that much of this time, however, such as time attributable to eating and downtime cannot be attributable to the overall total, as it was not in the service of the vessel.

The record indicates that the plaintiff applied for his position with CleanBlast as a sandblaster/painter in March 2012, and began working at some point thereafter. It is uncontested that his initial job with the company was performed solely on platforms that did not require transport by vessel. Following the completion of that job, however, the plaintiff began a multi-week assignment for the Tennessee Oil and Gas project which required platform work that, due to the nature of the platforms, necessitated the use of vessels. As noted above, the plaintiff was assigned to the M/V *Brody Paul*.

The depositions establish that the M/V *Brody Paul* transported the plaintiff from the shore to various platforms for the work, returning to the shore weekly for supplies. During the time at the platforms, the plaintiff and crew performed their sandblasting/painting functions on the platform, but slept, ate, attended meetings, took breaks, tended to their equipment, and performed housekeeping functions such as laundry and the stocking of groceries aboard the vessel. When the job was halted due to weather, even for days at a time, the crew waited aboard the vessel for favorable conditions.

While the sandblasting/painting aspect of the plaintiff's services clearly were performed on the platform, the equipment for that job was located on, and, in fact, welded to the vessel. That equipment was further maintained aboard the vessel. The plaintiff suggested that, while aboard the vessel, there was no down time and that non-platform activities could include activities such as assisting the vessel's crew with taping/sealing the vessel's windows to protect it from the sandblasting activity. For one period of the plaintiff's assignment to the vessel, he worked as a relief supervisor, spending the majority of his time during that period on the vessel completing, among other things, paperwork.

While the plaintiff had no operational duties aboard the M/V *Brody Paul*, we do not find that it can be said, as a matter of law, that the plaintiff did not have a substantial connection to the vessel in terms of duration and nature. In addition to the fact that CleanBlast's work on the Tennessee Oil and Gas platform was vessel-dependent, we do not find merit in CleanBlast's contention that the fact that the plaintiff may not be able to reach the thirty percent rule of thumb is determinative in this case. First, if a fact-finder were to accept the plaintiff's account of his vessel/platform activities, his hourly work would be only slightly below the thirty percent figure. Additionally, a fact-finder could certainly determine that the plaintiff's assignment, which required repeated, week-long periods at sea, even in times of foul weather, were circumstances that exposed him to the perils of the sea. This is in addition to his account of daily work performed aboard that vessel.

Because of these circumstances, and despite the fact that the majority of the plaintiff's work was obviously platform-based, we conclude that genuine issues of material fact remain. Accordingly, we find that this is an instance where, although the plaintiff may have rendered less than thirty percent of his time in the service of the vessel, other factual circumstances may support a reasonable fact-finder's determination that he should be afforded seaman status. Thus, the summary judgment entered in favor of CleanBlast was in error. We reverse that determination and remand for further proceedings.

**DECREE**

For the foregoing reasons, we reverse the summary judgment entered in favor of the defendant—appellee CleanBlast, LLC and remand for further proceedings. Costs of this proceeding are assessed to CleanBlast.

**REVERSED AND REMANDED.**