STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-1297


EDWARD GROGAN

VERSUS

WOMEN'S AND CHILDREN'S HOSPITAL, INC., ET AL.


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-2155
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders and
Glenn B. Gremillion, Judges.

**Saunders, J., dissents and assigns written reasons.**

AFFIRMED.


**Donald L. Mayeux**
**P. O. Box 1460**
**Eunice, LA 70535**
**(337) 457-9610**
**Counsel for Plaintiff/Appellant:**
    **Edward Grogan**

William W. Stagg
Tiffany Babineaux Thornton
Durio, McGoffin, Stagg & Ackermann
P. O. Box 51308
Lafayette, LA 70505-1308
(337) 233-0300
Counsel for Defendant/Appellee:
     Women's and Children's Hospital, Inc.

Sterling W. LeJeune, Jr.
104 Camille St.
Lafayette, LA 70506
In Proper Person:
     Sterling Termite and Pest Control, Inc.

GREMILLION, Judge.

The plaintiff, Edward Grogan, appeals the trial court's grant of summary judgment in favor of the defendant, Women's and Children's Hospital, Inc. d/b/a Women's and Children's Hospital, and the dismissal of his claims against it with prejudice. We affirm.

## FACTS

On September 7, 2003, Grogan was staying overnight in the room of his three-month-old stepson, who was a patient of the Hospital. During the night, while sleeping on a couch, he felt a sting on his left arm like a mosquito bite. When he woke up the next morning, he noticed a knot on his arm, which later became swollen and oozed a foul-smelling fluid. Eventually, Grogan underwent two surgical procedures to cleanse the abscess which developed from the bite.

Although Grogan never actually saw what bit him, he filed suit against the Hospital and its exterminator, Sterling Termite and Pest Control, Inc., alleging he was bitten by a Brown Recluse Spider or some other type of poisonous insect. The Hospital answered denying liability for Grogan's injury, but affirmatively pled the defenses of comparative fault, third-party fault (Sterling), and failure to mitigate damages. The Hospital then filed a motion for summary judgment alleging that no genuine issues of material fact existed and that it was not liable to Grogan as it had no previous knowledge or constructive knowledge of the presence of a dangerous condition, i.e. a Brown Recluse Spider, which would constitute a vice, ruin, or defect in the hospital. Following a hearing, the trial court granted summary judgment in favor of the Hospital and dismissed Grogan's claims with prejudice. This appeal

1

followed.

## ISSUE

On appeal, Grogan argues that the trial court erred in finding an absence of genuine issues of material fact and in granting summary judgment in favor of the Hospital.

## SUMMARY JUDGMENT

The standard of review in summary judgment cases is well settled. La.Code Civ.P. art. 966. Pursuant to Article 966(C)(2), if the mover will not bear the burden of proof at trial, then it is only required to "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." Upon this showing, the burden then shifts to the adverse party to produce evidence establishing "that he will be able to satisfy his evidentiary burden of proof at trial." *Id.* The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains. *Kumpe v. State*, 97-386 (La.App. 3 Cir. 10/8/97), 701 So.2d 498, *writ denied*, 98-0050 (La. 3/13/98), 712 So.2d 882.

## NEGLIGENCE

Louisiana Civil Code Article 2317 provides:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This however, is to be understood with the following modifications.

Louisiana Civil Code Article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of a reasonable care, should have known of the ruin,

2

vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

In order to prevail on a negligence claim, Grogan must prove: (1) that the thing which caused him damage was in the Hospital's custody or control; (2) that it had a vice or defect which created an unreasonable risk of harm; (3) that his injuries were caused by the defect; (4) that the Hospital knew or should have known of the unreasonable risk of harm; and (5) that the damage could have been prevented by the exercise of reasonable care, which the Hospital failed to exercise. *Conques v. Wal-Mart Stores, Inc.*, 00-619 (La.App. 3 Cir. 2/14/00), 779 So.2d 1094, *writ denied*, 01-0715 (La. 4/20/01), 790 So.2d 643. Failure to prove any one of these elements will defeat Grogan's claim. *Dauzat v. Thompson Const. Co., Inc.*, 02-989 (La.App. 5 Cir. 1/28/03), 839 So.2d 319.

In support of its motion for summary judgment, the Hospital introduced the affidavit of William Ferry, the Director of Quality Control and Risk Management for the Hospital. He stated that prior to September 7, 2003, he neither knew of nor ever received/discovered any complaints of a spider infestation, bite, or sting at the hospital. He further stated that the Hospital had a pest control contract in place on the date of the incident. The Hospital also introduced a portion of Grogan's deposition in which he stated that he felt a sting on his arm while he was sleeping, such as a mosquito bite, and that when he awoke the next morning, there was a knot on his arm.

3

The Hospital also introduced the affidavit of Randal Hebert, the holder of a Licensed Pest Control Applicator and an advanced license, from the Louisiana Department of Agriculture and Forestry, and a service manager for J & J Exterminating Company. Hebert stated that he was familiar with the 2003 industry standards pertaining to commercial facilities such as the Hospital, as well as those pertaining to pests such as the Brown Recluse Spider. He further said that he had personal experience providing pest control services to hospitals.

Hebert stated that the industry standards for commercial pest control maintenance required monthly site inspection of common areas, perimeter treatment, and treatment for pests which are documented or identified since the last inspection. He indicated that there are other requirements pertaining to rodents in and around food service areas. Hebert explained that Brown Recluse Spiders are nocturnal in nature and, as they are not very active or mobile, they are difficult to detect and treat. Unless the spider is actually seen, he stated that industry standards do not require commercial clients to institute treatment or preventive programs.

Hebert stated that pest control regimens are restricted in hospitals due to the limitations on the types of pesticides/chemicals which can be used. Additionally, he stated that there is no effective preventive or eradication treatment for Brown Recluse Spiders due to these limitations, and if treatment is required, he stated that it is expensive and requires a complete evacuation of the treated area for several hours. Hebert said that his opinions are supported by *Truman's Scientific Guide to Pest Management Operations*, which is utilized by the Louisiana Structural Pest Control Commission. Finally, he testified that there is no warranty or guarantee

4

of eradication, the only warranty being a thirty day re-treatment/callback period at no further costs.

In opposition, Grogan introduced his own deposition testimony, as well as that of Ferry, Sterling LeJeune, the proprietor of Sterling Termite and Pest Control, and the affidavit of James Hubbard. In his deposition, Grogan testified that the Hospital was undergoing construction at the time he was there as evidenced by a plastic covering on the ceiling along the corridor where his step-son's room was located.

Ferry testified that the Hospital had undergone significant construction during the past twenty-four months, which may have just commenced at the time Grogan was bitten. He stated that the pediatric unit, where Grogan's room was located, was not located in the construction area, but that construction was occurring in the labor and delivery unit, approximately 100-250 feet away, and also on the second floor above the pediatric unit. Ferry testified that appropriate barrier mechanisms were in place to prevent contaminants from moving across the area and that a temporary wall was constructed any time an exterior wall was moved. He agreed that there is an increased potential for problems involving insects and spiders when construction occurs, however, he had no knowledge of any such events happening prior to Grogan being bitten. Nor was he aware of any spider bites occurring since this incident. After Grogan reported his bite, he stated that the room, as well as the entire area, was inspected, but no spiders were found.

Ferry stated that the Hospital undertook reasonable measures to prevent problems with insects/spiders from occurring. He stated that it contracted with

Sterling Termite and Pest Control for pest control services, but said that the contract did not guarantee that it would eradicate all spiders. He said that the Hospital also conducted routine surveillance rounds on the lookout for such pests. In the absence of any problems, he said that no other measures were necessary. Furthermore, he stated that in the absence of an antecedent event, there was no way to predict that such an event would happen. Ferry testified that he was unaware of any measures that could have been taken to prevent Grogan from being bitten. He described the spider bite as being an unfortunate accident.

Ferry said that the Hospital takes reasonable steps to control those risks that it can control and, in doing so, engages expert services such as Sterling Termite and Pest Control. He stated that he relied on its advice and that he had no evidence that its actions were anything less than satisfactory, as evidenced by the fact that there were no prior reports of spider/insect bites.

LeJeune testified that the Federal Insecticide Fungicide Rodenticide Act overrides all state standards in the provision of pest control services and it requires that there be a target pest before such services may be provided to a customer. He explained that spiders are generally not the target pest, but that they are eradicated collaterally by the pesticides targeting the main pests.

LeJeune further stated that hospitals are treated differently from other commercial clients due to the vulnerability of the patients located therein. Normally, he stated that he would put a perimeter barrier down around the hospital by spraying a band of pesticides one foot out from the building and then two feet up the side of the building to stop the migration of insects from the outside through weep holes and

6

mortar joints. Inside, he said that normally the only areas regularly serviced are the kitchen and storage areas. Otherwise, he stated that he inspected the offices, patients' rooms, and medical procedure areas, inquired about any problems, and rechecked previous hot spots.

In prior problem areas, he stated that he sprayed a pyrethrin flushing agent in an area (crack) to see if anything came out. He stated that sticky boards were also placed under sinks in rooms to monitor pest activity. If a problem arose, LeJeune stated that the patient was removed and then the room was serviced. In the absence of an insect/spider sighting, he said that no spraying was done in the rooms because of the fear of exposing patients to pesticides and of potential litigation.

LeJeune was not aware that any special consideration was given to the fact that the Hospital was undergoing construction in 2003. Although he did not think that the induction of outside materials would increase the chance of exposure to Brown Recluse Spiders, he stated that such exposure might be increased if any walls were disturbed. He stated that the Hospital's building was not in good shape as there were a number of areas on the upper floors were the mortar joints had settled or cracked and where the windows did not meet. However, he stated that this problem was not unique to the Hospital and that the only problems it caused was with regard to red wasps entering through the cracks.

LeJeune admitted that Brown Recluse Spiders are prevalent in South Louisiana and that they are dangerous. In order to minimize their risk, he stated that he put down sticky boards and monitored areas by looking for spider webs. He also expected the Hospital to notify him of any problems regarding insects/spiders and to

7

maintain its housekeeping measures. He testified that he never received any reports from the Hospital in regard to Brown Recluse Spiders nor was he aware of any conditions which would require him to warn the Hospital about such pests. He said that the only calls he recalled receiving from the Hospital concerned red wasps. He further said that Brown Recluse Spiders were not the target pest under the Hospital's contract with Sterling Termite and Pest Control and that the contract provided no guarantee with regard to such spiders.

Hubbard is the owner of Hubbard's Pest Control and Fumigation Services and a licensed pest control applicator. In his affidavit, he stated that he was familiar with the industrial standards applicable in 2003, and that he had personal experience in providing pest control services to commercial enterprises such as nursing homes and in buildings infested with Brown Recluse Spiders. He stated that it is his practice to extensively treat the perimeter of the building, attic, and interior of the building and that he guarantees the extermination of all pests and spiders, including Brown Recluse Spiders.

Hubbard stated that a building is greatly exposed to pests when it is being renovated or added on to, especially when building materials/supplies are brought in or when existing walls are disturbed. He stated that Brown Recluse Spiders tend to stay in attics and false ceiling areas, but will move when their habitat is disturbed. He said that they are very dangerous, but they are easily killed through the use of ordinary pesticides. In order to treat a patient's room, he said that the patient is removed from the room, the insecticide is sprayed, and then allowed to dry. The patient is out of the room for a maximum of thirty minutes. In order to eradicate

8

the Brown Recluse Spider, he stated that he sprays attics, exterior barriers, all maintenance rooms, and all undisturbed areas on a regular basis. Hubbard stated that a business should take extra precautions when construction is undergoing, as this disturbs the Brown Recluse Spider's environment and causes them to move.

After reviewing the evidence presented by the Hospital, we find that it presented evidence showing Grogan will be unable to prove that it knew or should have known of the presence of a Brown Recluse Spider, which created an unreasonable risk of harm in the Hospital's building. Ferry testified that he had never received any complaints about Brown Recluse Spiders prior to Grogan being bitten and that the Hospital had a pest control contract in place at that time. Furthermore, Hebert stated that the 2003 industry standards required monthly inspections, perimeter treatment, and treatment for documented insects/spiders. He further explained that industry standards do not require treatment for Brown Recluse Spiders unless they are actually sighted. As they are nocturnal and not very active, he stated that they are difficult to treat. Thus, the burden shifted to Grogan to establish that he would be able to satisfy that evidentiary burden of proof at trial.

Upon reviewing Grogan's evidence, we find that he has failed to present evidence showing that the Hospital knew or should have known of the presence of a Brown Recluse Spider. Although the Hospital was undergoing construction at the time Grogan was bitten, there was evidence that the Hospital regularly surveyed the area and had a pest control contract in place for the eradication of insects. LeJeune testified that he complied with industry standards providing pest control services to the Hospital, since he treated its building externally and those areas internally which

9

were normally serviced. With regard to other areas, he stated he was limited in the types of pest control services he could offer due to the presence of patients. Unless insects/spiders were documented, he stated that it was not the industry's practice to spray pesticides in the patient's rooms for fear of exposing them to pesticides and because of the risk of litigation. Neither LeJeune nor Ferry were ever notified that Brown Recluse Spiders were present prior to the incident involving Grogan.

Despite the fact that the Hospital was undergoing construction, we find that it was doing all it could reasonably do with regard to insects/pests. Had a Brown Recluse Spider been previously documented in the room Grogan was occupying, then LeJeune said that measures would have been undertaken to correct the problem. Given the difficulty in detecting Brown Recluse Spiders, we think it would be too onerous to expect the Hospital to treat every room in the location of the construction just on the off chance that a spider might be present as suggested by Hubbard. Accordingly, we find that Grogan has failed to present evidence establishing that he will be able to satisfy his burden of proof at trial. Thus, the judgment of the trial court granting summary judgment in favor of the Hospital is affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiff-appellant, Edward Grogan.

**AFFIRMED.**

NUMBER 07-1297

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

EDWARD GROGAN

VERSUS

WOMEN'S AND CHILDREN'S HOSPITAL, INC., ET AL.

**Saunders, J., dissents and assigns written reasons**.


The majority would affirm the decision of the trial court based on the plaintiff's alleged inability to prove that the Hospital knew or should have known of the unreasonable risk of harm presented by a brown recluse spider, yet the plaintiff offered as evidence an affidavit from Mr. James Hubbard, the owner of Hubbard's Pest Control and Fumigation Services, that tends to refute that. In the affidavit, Mr. Hubbard states that, from his experience dealing with nursing homes and other commercial enterprises, he has come to learn that a building is greatly exposed to pests when it is being renovated or added on to, especially when building materials or supplies are brought in or when existing walls are disturbed. Mr. Hubbard goes on to advise that a business should take extra precautions when construction is undergoing, as this disturbs the environment of the brown recluse and often causes it to move. Although a trier of fact may ultimately find the heft of Mr. Hubbard's affidavit in proving the knowledge element to be outweighed—even substantially so—by the countervailing evidence offered by the defendants, the affidavit itself is sufficient to establish the existence or nonexistence of that element as a genuine issue of material fact.

In determining the proper disposition of a motion for summary judgment,

"factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Willis v. Medders*, 00-2507, p. 2 ((La. 12/8/00), 775 So.2d 1049, 1050; *see also Indep. Fire Ins. Co. V. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226. More particularly, as I previously confessed while writing for the majority of this court in *Simon v. Biddle*, 06-435, p. 4 (La.App. 3 Cir. 12/29/06), 946 So.2d 733, 735-36:

> I dissented in *Ray* [*v. Rodmar Enterprises, Inc.*, 03-1133 (La.App. 3 Cir. 3/17/04), 868 So.2d 311] as I felt that the liberalization of the summary judgment procedure might have justified some minimal weighing of evidence in extreme cases such as where, illustratively, the oath of a thousand angels is opposed by that of a single rogue . . . I now recognize and concede that, under current law, no such exception to the general rule exists and that there can be no weighing of evidence at the summary judgment stage.

Although, to the best of my knowledge, neither angel nor rogue comes before the court in the case presently at issue, the moral of *Simon* applies equally here as it did in that case: where the defendant is the moving party, the existence of even the merest scintilla of evidence tending to prove a material issue of fact crucial to the plaintiff's case is sufficient to defeat a motion for summary judgment. Here, it is not inconceivable that a trier of fact would consider Mr. Hubbard's affidavit sufficient to prove that the Hospital knew or should have known of the unreasonable risk of harm presented by brown recluse spiders as a result of the ongoing construction at the hospital. Thus, it is my feeling that disposing of the plaintiff's claim via summary judgment at this stage of the proceedings is both premature and unsupported by applicable law.

For the above stated reasons, I must respectfully disagree with the opinion of the majority.

2