STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-502


JEFFERY SMITH

VERSUS

SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION


************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2012-2932, DIVISION "F"
HONORABLE SHARON WILSON, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**




**Calli M. Boudreaux**
**Watson, Blanche, Wilson & Posner**
**Post Office Drawer 2995**
**505 North Boulevard**
**Baton Rouge, Louisiana 70821-2995**
**(225) 387-5511**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        Southwest Louisiana Hospital Association

**Claude P. Devall**
**Donald W. McKnight**
**Hoffoss Devall, LLC**
**3205 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 433-2053**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Jeffery Smith**

**GENOVESE, Judge.**

Defendant, Southwest Louisiana Hospital Association, doing business as Lake Charles Memorial Hospital, suspensively appeals a trial court judgment awarding Plaintiff, Jeffery Smith, $60,268.70 in damages for injuries suffered when he slipped on hospital property. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On the rainy morning of March 21, 2012, Jeffery Smith went to Lake Charles Memorial Hospital (LCMH) for a doctor's appointment.[1] Mr. Smith claims that he slipped on the terrazzo floor as he walked into LCMH's entrance. Although he managed not to fall, his body twisted, and he felt pain in his neck and back as a result thereby. Mr. Smith sued LCMH, alleging its liability pursuant to La.Civ.Code art. 2317.1, due to the existence of an unreasonably dangerous condition existing on the floor at its entrance, which allegedly caused an aggravation of his pre-existing neck and back injuries. He sought medical expenses and general damages.

In its defense of the case, LCMH pointed out that Mr. Smith had an extensive medical history, including back surgeries for which he was still under a physician's care, at the time of this accident. Furthermore, it attributed Mr. Smith's accident to his own failure to exercise reasonable care on a rainy day.

Following a one-day bench trial, the trial court rendered judgment in favor of Mr. Smith, awarding him $22,268.70 for past medical expenses, $18,000.00 for past pain and suffering, and $20,000.00 for future pain and medical expenses, for a total damage award of $60,268.70. In accordance with a stipulation between the

---

[1]According to his son, Nakota Smith, Mr. Smith was on his way to an appointment with Reynard C. Odenheimer, M.D.

parties as to a cap on the award, the award was reduced to $50,000.00. LCMH suspensively appeals.

## ASSIGNMENTS OF ERROR

LCMH assigns the following errors for our review:

1. The trial court erred in awarding damages to [Mr. Smith] for injuries sustained from a condition which was open and obvious and should have been observed in the exercise of reasonable care.

2. The trial court erred in awarding damages to [Mr. Smith] when there was no medical testimony of a causal relationship between the accident and subsequent injury.

3. The trial court erred in its award of future medicals when there was no medical testimony presented regarding same and erred in its awarding of past medicals which were not supported by the medical records in evidence.

## LAW AND DISCUSSION

Mr. Smith contends that the condition of the floor where he entered LCMH[2] was an unreasonably dangerous condition which caused his accident and injuries. Mr. Smith's action against LCMH is governed by La.Civ.Code art. 2317.1, which states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

In order for Mr. Smith to prevail under La.Civ.Code art. 2317.1, he had to prove: (1) that the thing which caused him damage was in LCMH's custody or control; (2) that it had a vice or defect which created an unreasonable risk of harm; (3) that

---

[2]The Quality Review Report prepared by LCMH's security officer, Raymond D. Laughlin, refers to the location of Mr. Smith's accident as the MOB2 Lobby Entrance.

2

his injuries were caused by the defect; (4) that LCMH knew or should have known of the unreasonable risk of harm; and, (5) that the damage could have been prevented by the exercise of reasonable care, which LCMH failed to exercise. *See Grogan v. Women's & Children's Hosp. Inc.*, 07-1297 (La.App. 3 Cir. 4/16/08), 981 So.2d 162.

*Liability*

LCMH first assigns error with the trial court's ruling on liability. LCMH argues that the condition for which it was found negligent was open and obvious[3] and should have been observed by Mr. Smith in the exercise of reasonable care. LCMH contends that the evidence was insufficient to prove an unreasonably dangerous condition at the entrance where Mr. Smith allegedly slipped. According to LCMH, Mr. Smith "should have been barred from or at the very least have had a reduction [in] his recovery at trial based on the fact that any alleged water on the entrance way floor on a rainy day should have been an open and obvious condition."

Mr. Smith alleges that, at trial, LCMH "did not argue that the wet and slick condition was an open and obvious hazard." LCMH disputed the existence of any water on the floor and, altogether, the occurrence of an accident. According to Mr. Smith, "there is absolutely no evidence that rain water tracked onto a light colored terrazzo floor would be 'open and obvious[.]'" Mr. Smith argues that the facts in the record support the trial court's finding of an unreasonably dangerous condition for which LCMH is liable.

---

[3]Our supreme court has explained that the general rule is that a property owner has a duty to keep the property in a reasonably safe condition; however, a property owner has no duty to protect against an open and obvious hazard which can be shown as a condition which should be obvious to all. *Pryor v. Iberia Parish Sch. Bd.*, 10-1683 (La. 3/15/11), 60 So.3d 594 (per curiam).

3

Our first determination is whether it was proven by a preponderance of the evidence that LCMH was negligent due to the existence of an unreasonably dangerous condition. Our standard of review was set forth in *Crews v. Broussard Plumbing & Heating*, 09-1268, p. 3 (La.App. 3 Cir. 5/12/10), 38 So.3d 1097, 1100, as follows:

> An appellate court may not set aside a trial court's findings of fact in the absence of a manifest error or unless it is clearly wrong. *Stobart v. State through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. *Mart v. Hill*, 505 So.2d 1120 (La.1987); *Stobart*, 617 So.2d 880; *Rosell*, 549 So.2d 840.

> Even if the appellate court believes its inferences are more reasonable than the factfinder's, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonably based upon the record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housley v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

Accordingly, we review the entire record to determine whether the trial court's factual conclusions were reasonable.

In addition to documentary evidence and his own testimony, Mr. Smith also presented live testimony from Raymond D. Laughlin, LCMH security officer; William L. Wilkie, LCMH director of facilities and safety officer; Nakota Smith, Mr. Smith's son; and, Jason T. English, safety expert. LCMH presented only documentary evidence via depositions and medical records.

The first to testify was Raymond D. Laughlin, who had been employed as an LCMH security officer for twenty-five years and was on duty at the time of Mr.

4

Smith's accident. Mr. Laughlin recalled responding to the accident scene, and he described the weather as rainy. According to Mr. Laughlin, either the linen department or the housekeepers usually put down a warning cone at that entrance when the weather was rainy. He stated that he brought Mr. Smith a wheelchair, then he recorded the incident in a written report entitled Quality Review Report. Mr. Laughlin testified that if a warning cone had been present, his report would have indicated its presence; however, the report did not state that a warning cone was present. He then brought Mr. Smith in the wheelchair to his doctor's office for his appointment.[4] Mr. Laughlin recalled Mr. Smith saying he had undergone five back surgeries. When questioned whether it was standard procedure to photograph an accident scene, Mr. Laughlin admitted that it was; however, he could not answer why LCMH had no pictures of the accident scene.

Mr. Smith next called William L. Wilkie, the director of facilities and safety officer, who had been employed with LCMH for thirty-five years. According to Mr. Wilkie, terrazzo flooring does not exist at any other entrances to LCMH, only at the one where Mr. Smith slipped. Mr. Wilkie did acknowledge the existence of a large embedded rug at a different entrance, but he could not explain the absence of a large embedded rug at the entrance where Mr. Smith slipped. When questioned about a previous fall involving a different claimant, Mr. Wilkie claimed it was not in the same spot. According to Mr. Wilkie, after Mr. Smith's accident, a risk assessment was performed, and anti-slip safety strips were adhered to the terrazzo floor in question.

---

[4]It is unclear where the doctor's office is located in the hospital; however, Mr. Laughlin testified that he brought Mr. Smith to pulmonology and Mr. Smith testified he had an appointment to undergo tests on his lungs.

5

At the time of the accident, Nakota Smith, Mr. Smith's son, was walking in front of his father when he slipped. He testified that he did not see Mr. Smith slip, but he noticed something was wrong because he turned around to see Mr. Smith holding onto the wall. Nakota Smith recalled his father's complaints of pain being profound and immediate.

Mr. Smith testified that he was sixty-two years old with a history of heart surgery, elbow surgery, and four back surgeries.[5] He explained that on the morning of March 21, 2012, he was on his way to an appointment to see a doctor at LCMH. He was accompanied by his son, Nakota Smith. While walking into the entrance of LCMH behind his son, he slipped on the terrazzo floor. He stated that, although he managed not to fall to the ground by placing his hands against the wall, he twisted abruptly and felt immediate pain in his neck and back. Mr. Smith recalled that a security guard brought him a wheelchair and asked him what happened. Then, while sitting in the wheelchair, he was brought to his appointment by the security guard. Mr. Smith stated that his pain became so bad that he could not complete the tests being administered by his doctor. He went to the emergency room of LCMH. Mr. Smith was seen by a nurse practitioner, who performed x-rays; however, he was told nothing was wrong, and he was sent home. On March 23, 2012, Mr. Smith went to the emergency room of Christus St. Patrick Hospital in Lake Charles, Louisiana, complaining of severe neck and back pain as a result of his accident at LCMH two days earlier.

The last witness to testify was Jason T. English. Mr. English has a Bachelor's of Science degree in industrial engineering with a safety engineering

---

[5]Mr. Smith's surgeries occurred before the accident at issue herein.

6

specialty and a Master's of Science degree in safety engineering. He is certified in tribometry, which he explained is the measure and evaluation of pedestrian traction on walking surfaces. Mr. English was accepted as an expert by the trial court in the field of safety, specifically safety engineering, safety management, and floor safety. He stated that he personally inspected the site of the accident as well as other entrances at LCMH. Mr. English opined that Mr. Smith slipped because the terrazzo floor lacked anti-slip material and that the floor was unsafe during wet weather conditions. Mr. English further opined that a large embedded rug would have prevented the accident. He observed another LCMH entrance, which had a large embedded rug without a terrazzo floor.

We find the trial court's findings relative to LCMH's liability in this case are reasonable in light of our review of the record in its entirety. The trial court considered Mr. English's uncontroverted expert testimony that an unreasonably dangerous condition existed. The testimony of LCMH's security officer, Mr. Laughlin, was that a warning cone normally appeared at that door during rain. This fact establishes that LCMH knew this area was slippery during wet weather conditions and that it could have prevented the damage caused by Mr. Smith's accident with the exercise of reasonable care. Though there are two permissible views of the evidence, the trial court's choice between them cannot be considered manifestly erroneous or clearly wrong, nor is this court allowed to substitute its view for that of the trial court. *Stobart*, 617 So.2d 880. We conclude that there was no manifest error in the trial court's factual determination that the entrance of LCMH where Mr. Smith slipped was unreasonably dangerous, that the trial court was not clearly wrong, and that the trial court's findings are reasonably based upon the record and evidence presented.

*Causation*

LCMH next assigns error with the trial court's ruling on causation. LCMH contends that Mr. Smith's complaints of pain are simply the result of pre-existing conditions and that he failed to prove a causal connection between the accident and his subsequent injuries.

In defense of LCMH's position that Mr. Smith's extensive medical history thwarts his claim, Mr. Smith admits that, prior to this accident, he sought treatment with Peter Karam, M.D., for management of his back pain. Dr. Karam's deposition testimony was offered at trial. He confirmed that his treatment of Mr. Smith began in 2010 and that he prescribed medication to control Mr. Smith's back pain. Prior to this accident on March 21, 2012, Mr. Smith had not seen Dr. Karam since February 2, 2012.

Mr. Smith testified that when he slipped, his upper body also twisted and that the onset of back pain was both immediate and much greater than his previous back pain. He attempted, but failed to complete, his appointment due to his pain. He then left his appointment and went to the LCMH emergency room. Two days later, he went to Christus St. Patrick Hospital's emergency room with unmanageable pain. He also sought treatment from Lynn Foret, M.D., and Rodney Acuna, M.D. According to Mr. Smith, Dr. Foret recommended surgery, but he did not want to go through another surgery, and his cardiologist also purportedly disapproved of another surgery.

Nakota Smith recalled the accident causing his father immediate pain. He described profound differences between his father pre- and post-accident. According to Nakota Smith, his father lived with and could manage his pain prior to this accident. After, however, his pain became nearly unmanageable. Mr.

Smith could no longer stand up straight; he dragged his leg when he walked; he avoided leaving home; and, he is in constant pain.

We agree with the trial court that Mr. Smith is clearly an "eggshell plaintiff." This court noted recently in *Bienemann v. State Farm Mutual Automobile Insurance Co.*, 08-1045, p. 4 (La.App. 3 Cir. 2/4/09), 3 So.3d 621, 623 (quoting *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La.1993)):

> [T]he defendant's liability for damages is not mitigated by the fact that the plaintiff's pre-existing physical infirmity was responsible in part for the consequences of the plaintiff's injury by the defendant. It is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct.

In its reasons for judgment in this case, the trial court noted that:

> Mr. Smith is unique in a sense that he truly is an eggshell plaintiff. He is very defective prior to the accident, just looking at his medical records. However, you do take plaintiff[s] the way that you find them, and I believe the testimony of Mr. Smith. I believe that . . . this fall has exacerbated his pain.

After carefully reviewing the testimony and evidence, we find there was a causal connection between the accident and Mr. Smith's subsequent injury, pain, and suffering. The trial court did not manifestly err in ruling that LCMH's negligence caused an aggravation of Mr. Smith's injuries.

### Damages

The trial court awarded Mr. Smith damages as follows: (1) $22,268.70 for past medical expenses; (2) $18,000.00 for past pain and suffering; and, (3) $20,000.00 for future pain and medical expenses. LCMH raises two separate arguments in its final assignment of error.

Firstly, LCMH contests the award for past medical expenses. The trial court awarded Mr. Smith $22,268.70, which constituted the entirety of his requested past

9

medical expenses. LCMH alleges that Mr. Smith's past medical expenses were not supported by the record. Mr. Smith contends that the trial court made reasonable factual findings based on the evidence presented at trial and did not err.

We recognize the following regarding awards of medical expenses:

[W]hen a plaintiff alleges that medical bills were incurred "and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment." [*Esté v. State Farm Ins. Co.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857.] A fact finder errs if it fails to award the full amount of medical expenses incurred as a result of the accident and proven by a preponderance of the evidence. *Revel v. Snow*, 95-462 [(]La.App. 3 Cir. 11/2/95), 664 So.2d 655, *writ denied*, 95-2820 (La.2/2/96), 666 So.2d 1084.

*Barras v. Progressive Sec. Ins. Co.*, 14-898, p. 4 (La.App. 3 Cir. 2/11/15), 157 So.3d 1185, 1189 (quoting *Gradnigo v. La. Farm Bureau Cas. Ins. Co.*, 08-1198, pp. 15-16 (La.App. 3 Cir. 3/4/09), 6 So.3d 367, 377).

Mr. Smith introduced evidence of past medical expenses totaling the amount requested that were incurred during his period of treatment for alleged accident-related injuries. He testified that he had reviewed the bills, and they were all incurred due to his increased back pain. No evidence was offered to contradict these bills or to provide reasonable suspicion that they were incurred for any unrelated accident or other occurrence. Therefore, we find that the trial court did not manifestly err when it awarded Mr. Smith the entirety of his requested past medical expenses.

Also, LCMH contests the award for future medical expenses. Complicating this issue is the fact that the trial court included the future medical expense award in its lump sum award of $20,000.00 for future pain **and** medical expenses. LCMH alleges that Mr. Smith "failed to meet his burden of proof with regards to

10

future medicals as he provided no testimony that it was more probable than not that future medical expenses would be incurred." We agree.

This court addressed the issue of future medical expenses in *Cormier v. Colston*, 05-507, p. 9 (La.App. 3 Cir. 12/30/05), 918 So.2d 541, 547-48:

> Medical expenses are a component of special damages. *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La.2/18/05), 896 So.2d 31. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. *Iwamoto v. Wilcox*, 04-1592 (La.App. 3 Cir. 4/6/05), 900 So.2d 1047. In meeting her burden of proof on the issue of future medical expenses, the plaintiff must show that, more probably than not, these expenses will be incurred and must present medical testimony that they are indicated and the probable cost of these expenses. *Veazey v. State Farm Mut. Auto Ins.*, 587 So.2d 5 (La.App. 3 Cir.1991). An appellate court reviews an award of special damages pursuant to the manifest error standard of review. *Iwamoto*, 900 So.2d 1047.

Our review of this record reveals merit to LCMH's contention—there was neither medical testimony that Mr. Smith would incur future medical expenses nor evidence of the probable cost thereof. However, although we do find merit in LCMH's argument, we also find that it is misplaced.

The trial court's lump sum award makes the amount awarded to Mr. Smith for future medical expenses indeterminate. It is impossible to determine how much of the $20,000.00 award was intended for either Mr. Smith's future medical expenses or future pain. The record indicates that Mr. Smith continued to endure pain and suffering. Therefore, we are unable to say that the trial court's award for future pain is manifestly erroneous. Further muddling this issue is the stipulation between the parties capping Mr. Smith's total damage award at $50,000.00. Even though we find no evidentiary support for an award of future medical expenses, we also find that a reduction thereof would not impact the final amount awarded to Mr. Smith.

11

In the eighteen-month period between Mr. Smith's accident and the trial of this matter, Mr. Smith incurred medical expenses of $22,268.70, and his past pain and suffering was valued at $18,000.00. These awards total $40,268.70. All that remains before reaching the $50,000.00 cap on Mr. Smith's total damage award is $9,731.30. Considering that Mr. Smith was awarded $1,000.00 per month for his past pain and suffering, and that he will continue to endure pain and suffering, we find the trial court's erroneous award for future medical expenses to be inconsequential. Thus, the judgment of the trial court rendered in favor of Mr. Smith and against LCMH in the amount of $50,000.00 shall remain intact.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to Defendant/Appellant, Southwest Louisiana Hospital Association.

**AFFIRMED.**