# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1183

**LINDA MARIE SEARILE**

**VERSUS**

**VILLE PLATTE MEDICAL CENTER, LLC,
D/B/A MERCY REGIONAL MEDICAL CENTER, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 73631
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Marcus A. Allen, Sr.**
**Attorney at Law**
**251 La Rue France**
**Lafayette, Louisiana  70508**
**(337) 289-1762**
**Counsel for Plaintiff/Appellant:**
        **Linda Marie Searile**

**Nicholas Gachassin, Jr.**
**Nicholas Gachassin, III**
**Gary J. Delahoussaye**
**Gachassin Law Firm**
**Post Office Box 80369**
**Lafayette, Louisiana  70598**
**(337) 235-4576**
**Counsel for Defendants/Appellees:**
        **Ville Platte Medical Center, LLC,**
        **D/B/A Mercy Regional Medical Center,**
        **Lifepoint Holdings 2, LLC, and**
        **Lifepoint RC, Inc.**

**KEATY, Judge.**

Plaintiff, Linda Marie Searile, appeals the trial court's granting of summary judgment in favor of Defendants, Ville Platte Medical Center, LLC, d/b/a Mercy Regional Medical Center, Lifepoint Holdings 2, LLC, and Lifepoint RC, Inc. (collectively Mercy Regional), and the dismissal of her claims against it with prejudice. For the following reasons, the trial court's judgment is affirmed.

### FACTS AND PROCEDURAL BACKGROUND

This premises liability and general negligence matter arose from ant bites sustained by Searile at Mercy Regional where she was a patient receiving treatment for injuries resulting from a different incident. Searile was admitted to Mercy Regional on September 14, 2011, after falling and hitting her head. Her condition deteriorated that evening, and she was transferred to the intensive care unit (ICU). On the morning of September 16, 2011, a nurse entered Searile's room and saw ants on her upper and outer forearm and in her bed. The attending nurse along with other nurses removed the ants from Searile's body and bed, and medications were administered to alleviate the pain and itching associated with the bites. She was discharged from Mercy Regional on September 19, 2011.

On September 14, 2012, Searile filed suit against Mercy Regional for damages arising from its alleged negligence, which included the following actions and/or inactions:

    a.)    Failure to maintain safe and clean facility, free from insect, bugs or animals which endanger the safety and care of visitors and patients;

    b.)    Failure to maintain a proper observation, lookout and/or being distracted or inattentive while taking care of patient in ICU;

c.)     Failure to take all reasonable evasive action to avoid the incident at issue herein; namely, Petitioner, **LINDA MARIE SEARILE** from being bitten and attacked by ants;

d.)     Failure to properly keep maintenance and routine extermination program for the prevention of insect and other rodents;

e.)     Failure of the Administration, ICU Supervisors, and Nurse to timely inform the family of the incident;

f.)     Acting in violation of the laws of the state of Louisiana Department of Health and Hospitals, all of which acts may be properly proven at the trial of this matter;

g.)     These acts of negligence are pleaded specifically herein and are in addition to other acts of negligence which will be shown at the trial of this matter.

Mercy Regional answered and denied liability for damages. It also filed a Motion for Summary Judgment arguing that Searile would be unable to meet her burden of proving negligence based upon premises liability under La.Civ.Code art. 2317.1, which required her to show: "a) that any of the Defendants knew or should have known of the alleged defect; and/or b) that any of the Defendants failed to exercise reasonable care." Therein, Mercy Regional also addressed Searile's general negligence claim asserted in her Petition for Damages by alleging that Searile would be unable to prove that Mercy Regional was "negligent in any way" and/or that it "breached any duty owed to her, i.e., fault."

After a hearing on July 7, 2015, the trial court orally granted the summary judgment which was reduced to writing in its July 28, 2015 Judgment. Searile appealed.

On appeal, Searile asserts the following assignment of error:

The trial court erred in granting judgment for the Defendant on their Motion for Summary Judgment when the Plaintiff's arguments regarding the veracity of **Julie Paul's** Affidavit, (based off the answer by the Defendant to the interrogatories) along with the documentary submissions of the *Pest Elimination Service Agreement*, and the

2

*Customer Service Reports*, clearly indicate evidence which shows that the Defendant *knew* or *should have known* that the ants existed prior to the ant infestation of September 16, 2011, in the ICU unit, and the hospital did not reasonably do anything to protect the Plaintiff from receiving the ant bites until after the Plaintiff was attacked and bitten by the ants. Additionally, there clearly exists several "genuine issues of material fact" remaining in the case and the Defendant's Motion for Summary Judgment should have [been] denied and the matter proceed to trial on the merits.

## DISCUSSION

The summary judgment procedure of La.Code Civ.P. art. 966(A)(2) "is designed to secure the just, speedy, and inexpensive determination of every action" except in certain designated cases. It is favored and is to be construed to accomplish those ends. *Id.* The trial court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

Further, and although La.Code Civ.P. art. 966(C)(2) expressly provides that "[t]he burden of proof remains with the movant[,]" the movant's burden does not require him to negate all essential facts of the adverse party's claim if the movant will not be required to bear the burden of proof at trial. Instead, the movant must "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* In turn, thereafter, if "the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

On appeal, the reviewing court considers a trial court's grant or denial of a motion for summary judgment under the same criteria that governed the trial court's consideration of the motion and pursuant to the *de novo* standard of review.

*Baldwin v. CleanBlast, LLC*, 14-1026, pp. 4-5 (La.App. 3 Cir. 2/4/15), 158 So.3d 270, 272-73, *writ denied,* 15-461 (La. 5/15/15), 170 So.3d 163.

In her only assignment of error, Searile contends that the trial court erred in granting Mercy Regional's Motion for Summary Judgment because the evidence showed that it knew or should have known that the ants existed prior to the

3

incident, and it failed to reasonably do anything to protect her from the ants. Searile claims that genuine issues of material fact exist which preclude the granting of the summary judgment.

## I.   Premises Liability

Searile's action against Mercy Regional rests on notions of premises liability under La.Civ.Code art. 2317.1, which provides, in part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

In order to prevail under La.Civ.Code art. 2317.1, Searile must prove:

> (1) that the thing which caused the damage was in the defendant's custody or control, (2) that it had a vice or defect that presented an unreasonable risk of harm, (3) that the defendant knew or should have known of the vice or defect, (4) that the damage could have been prevented by the exercise of reasonable care, and (5) that the defendant failed to exercise such reasonable care.

*Riggs v. Opelousas Gen. Hosp. Trust Auth.*, 08-591, p. 4 (La.App. 3 Cir. 11/5/08), 997 So.2d 814, 817.

In support of its Motion for Summary Judgment, Mercy Regional attached Searile's petition and other documents, including the October 20, 2014 affidavit of Jacob Fontenot, the Director of Plant Operations for Mercy Regional. Therein, Fontenot stated that he has maintained his position since September 6, 2006, and that his job duties include the "coordination of pest elimination through contract with Ecolab Pest Extermination Division." He explained that on the day in question, he immediately responded to reports that ants were discovered on Searile's body and bed. He attested that upon entering her room, he observed no ants as they had been removed by the nursing staff. Fontenot noted that he

4

subsequently treated Searile's room and the rest of the ICU by applying ant paste around the baseboards and spraying insecticides along the building's exterior. He stated that Mercy Regional receives monthly pest inspections and treatment through its Pest Elimination Services Agreement with Ecolab, which includes a monthly GroundForce Ant Program. He attested that the contract provided coverage for Searile's room on the day in question. Fontenot stated that the seven monthly inspections which occurred immediately before the incident were recorded on the monthly Ecolab Customer Service Reports, and "all indicate no pest activity found during service." He explained Mercy Regional's "work order system" wherein any employee can report to Plant Operations personnel of any condition that causes an unreasonable risk of harm, such as pest infestation, in order for corrective measures to be taken. He attested that there "were no complaints of ants . . . on September 16, 2011[,] other than the report of ants in Linda Searile's ICU unit." Fontenot stated that prior to September 16, 2011, there were no complaints, reports, or "work orders" generated regarding ant infestations in Mercy Regional. He noted that after the incident in question, "Plant Operations personnel continued to monitor the facility inside and out for ants, and no other ants or ant piles/mounds were observed[,] and the cause of the ant intrusion into the building was never determined." Fontenot stated that Mercy Regional "did not have prior knowledge of the purported vice or defect which Linda Searile claims caused her injuries."

The Ecolab Customer Service Reports that Fontenot discussed were attached to Mercy Regional's Motion for Summary Judgment and were introduced into evidence at the hearing. The service reports are dated: February 10, 2011; March 9, 2011; April 13, 2011; May 16, 2011; June 13, 2011; July 15, 2011; and

5

August 30, 2011.  Each service report indicates that no pest activity was found during these monthly services.  The May 16, 2011 service report shows that ants, among other pests, were targeted by using maxforce granular insect bait.  No other service report mentions ants.

Mercy Regional also attached to its Motion for Summary Judgment the October 20, 2014 affidavit of Julie Paul, the Quality Director and Assistant Director of Nurses at Mercy Regional.  She stated that she has maintained her position since April 2011 and that her responsibilities include responding to reports of injury caused by purported vices or defects in the facility.  Paul noted that she "was, and is, in the best position to know of the existence (or non-existence, as the case may be) of any incident report related to an injury sustained by purported vices or defects on the facility grounds, including insect or pest infestation in the facility[.]"  She explained that she worked on Friday, September 16, 2011, and that she learned of the incident on Monday morning, September 19, 2011.  Paul attested that upon learning of the incident, she "immediately responded to the . . . room to which Linda Searile had been transferred along with family member Mr. Rufus Searile."  She stated that upon arrival, she saw ant bites on Searile's arm, and she "personally educated the patient and her family to keep the areas of ant bites clean and dry, and to avoid scratching the pustules."

Paul attested that she investigated the incident and "confirmed that ICU nursing staff immediately removed all ants from Ms. Searile and her bed and linens upon discovery, and that the staff identified no other ants or any ant piles/mounds inside the facility."  She indicated that Fontenot reported to the ICU on the morning in question and treated the inside of the ICU and the facility's exterior for ants, and no additional reports of ants were thereafter made.  Paul stated that she

6

"verified with the nursing staff that the ICU did not have any further problems with ant infestation on 9/19/2011, 9/20/2011, and 9/21/2011." She noted that "all complaints or reports of injury sustained by purported vices or defects on the facility campus are communicated directly to [her] for review and investigation." Paul attested that Mercy Regional maintains an occurrence-reporting process whereby reports of conditions that may cause an unreasonable risk of harm are referred to her. She indicated that prior to the incident, she received no complaints or injury reports regarding ants in the ICU or the facility. Paul noted that nothwithstanding Searile's incident, Mercy Regional personnel had never been notified regarding ants or ant bites. She attested that Mercy Regional had no prior knowledge of the purported vice or defect which allegedly caused Searile's injuries.

In opposition to Mercy Regional's Motion for Summary Judgment, Searile attached the following to her memorandum: correspondence; medical records and patient chart; transfer and discharge summary; nurses' progress notes and patient care notes; affidavits of Searile's family members; photographs of her ant bites; and information explaining the Ecolab GroundForce Ant Program. Searile failed to attach the Ecolab Customer Service Reports and the Pest Elimination Services Agreement executed between Ecolab and Mercy Regional[1] which was dated November 8, 2008. At the hearing, however, Searile offered the service reports and the contract into evidence which the trial court admitted.[2] The terms and conditions of the contract provide that "[t]his agreement has an initial term of one year and will automatically renew on a month to month basis thereafter, until

_____

[1] We note that the contract was executed by "Ville Platte Medical Center," which we refer to as "Mercy Regional" in our opinion for uniformity.

[2] According to the transcript, Searile obtained the contract from Mercy Regional pursuant to its response to her discovery request. Although the trial court debated as to whether it was admissible evidence, it ultimately admitted it into evidence.

7

terminated by either party on 30 days prior written notice." It also contains a section regarding the GroundForce Ant Program. In this section, there is an unchecked box next to the words "GroundForce Ant Program[.]" The words "Per Month" with a blank line next to it also appear although the blank line is filled in with a handwritten zero with a line running through it. Conversely, this section contains a checked box next to the word "Monthly[.]"

After reviewing the evidence presented, we find that Searile failed to produce factual support to establish that she could prove that Mercy Regional knew or should have known of the presence of the ants which created an unreasonable risk of harm. Specifically, Fontenot attested that notwithstanding Searile's incident, there were no complaints of ants in and around Mercy Regional prior to September 16, 2011. His testimony is confirmed by Paul's testimony. We also find that Searile will be unable to prove that the damages could have been prevented by the exercise of reasonable care. Specifically, Fontenot attested that Mercy Regional maintained a monthly pest inspection contract, which includes the GroundForce Ant Program. He stated that the seven monthly pest inspections which occurred immediately before the September 16, 2011 incident indicated that no pest activity was found. His testimony is supported by the Ecolab Customer Service Reports that Mercy Regional submitted into evidence. The burden, therefore, shifted to Searile to show that she could be able to satisfy her evidentiary burden of proof at trial.

Based upon our de novo review, we find that Searile has failed to present evidence showing that Mercy Regional knew or should have known of the presence of ants and that it failed to exercise reasonable care. Searile argues in brief that the unchecked box along with the zero with a line through it in the

"GroundForce Ant Program" section of the contract fails to support Fontenot's affidvait wherein he states that Mercy Regional maintains a monthly GroundForce Ant Program. We find that her argument fails since the same section contains a checked box next to the word "Monthly[,]" which supports Fontenot's statement. Searile also points to the May 16, 2011 Ecolab service report which specifically states that maxforce granular insect bait was used as treatment for ants, and she argues that this is the date when Mercy Regional knew or should have known of ants. We find that this service report alone does not support a finding that Mercy Regional knew or should have known of ants.

The service report did not sway the trial court either based upon its oral ruling wherein it discussed Searile's failure to provide evidence in support of her position:

> The only Affidavit I have are the Affidavits from the hospital that said they had no prior ant infestation problems. The only Affidavits I have are from Ms. Julie Paul that says that they never had an ant bite complaint and no person know [sic] of ant bites. I looked at that receipt from Ecolab and I agree [it] doesn't say ants on everyone of them. It says it on some of them but if somebody w[ould] had taken a deposition to tell me that ants didn't have to be treated every month, they could be treated every three months. I don't know but I can't speculate this thing Mr. Allen. . . . I keep saying show me the facts . . . that will allow me to decide this Motion . . . . But the problem I have is I haven't been presented anything . . . factual to support the conclusion that the hospital knew or to offset that the hospital knew or should of known that they had an ant problem.

Most importantly, and as correctly noted by the trial court, Searile has failed to offer any factual evidence to show that Mercy Regional knew or should have known of the vice or defect and that it failed to reasonably act to prevent the harm for the purposes of premises liability under La.Civ.Code art. 2317.1. Jurisprudence further confirms that summary judgment should be granted in this case. In *Grogan v. Women's & Children's Hospital, Inc.*, 07-1297 (La.App. 3 Cir.

4/16/08), 981 So.2d 162, the plaintiff was staying overnight at the hospital with his stepson, who was a patient at the facility. While he was sleeping, he felt a mosquito-like sting on his left arm, and when he awoke the following morning, he noticed a knot on his arm where he was bitten. His arm became infected, and he underwent two surgeries to clean the abscess. The plaintiff filed suit against the hospital and its exterminator, alleging that although he never saw what bit him, he was bitten by either a brown recluse spider or some other poisonous insect. The hospital filed a motion for summary judgment alleging that it had no previous knowledege or constructive knowledge of a dangerous condition, i.e., brown recluse spider, which constituted a vice or defect for purposes of premises liability. The trial court granted the motion for summary judgment, and the plaintiff appealed.

In that appeal, we looked at the hospital's evidence in support of its Motion for Summary Judgment which included the affidavit of William Ferry, the Director of Quality Control and Risk Management for the hospital. Ferry testified that prior to the incident, "he neither knew of nor ever received/discovered any complaints of a spider infestation, bite, or sting at the hospital." *Id*. at 165. He also indicated that the hospital had a pest control contract in place on the date in question. In opposition, the plaintiff introduced the deposition testimony of Sterling Lejeune, the hospital's exterminator pursuant to a contract. Lejeune testified that he never received reports from the hospital regarding brown recluse spiders nor was he aware of any conditions which would require him to warn the hospital regarding such spiders.

10

In *Grogan,* we found that the plaintiff failed to present evidence showing that the hospital knew or should have known about the brown recluse spider which created an unreasonable risk of harm. We stated:

> Although the Hospital was undergoing construction at the time Grogan was bitten, there was evidence that the Hospital regularly surveyed the area and had a pest control contract in place for the eradication of insects. LeJeune testified that he complied with industry standards providing pest control services to the Hospital, since he treated its building externally and those areas internally which were normally serviced. With regard to other areas, he stated he was limited in the types of pest control services he could offer due to the presence of patients. Unless insects/spiders were documented, he stated that it was not the industry's practice to spray pesticides in the patient's rooms for fear of exposing them to pesticides and because of the risk of litigation. Neither LeJeune nor Ferry were ever notified that Brown Recluse Spiders were present prior to the incident involving Grogan.
>
> Despite the fact that the Hospital was undergoing construction, we find that it was doing all it could reasonably do with regard to insects/pests. Had a Brown Recluse Spider been previously documented in the room Grogan was occupying, then LeJeune said that measures would have been undertaken to correct the problem.

*Id*. at 168. We found that the plaintiff failed to present evidence showing that he could satisfy his burden of proof at trial and affirmed the trial court's granting of summary judgment in favor of the hospital.

In this case and similar to *Grogan*, there was evidence that Mercy Regional regularly surveyed the hospital and had a pest control contract in place for the eradication of pests. Similar to *Grogan*, the Director of Plant Operations in the instant matter, Fontenot, testified that Mercy Regional maintained a pest control service contract which provided monthly services for the eradication of pests. Additionally, and just like in *Grogan*, Fontenot and Paul attested that notwithstanding Searile's incident, there were no complaints of ants in and around the facility prior to September 16, 2011. We, therefore, agree with the trial court's

11

finding that Searile failed to present evidence showing that she could satisfy her burden of proof at trial, and we affirm the trial court's granting of summary judgment in favor of Mercy Regional with regard to Searile's premises liability claim.

## II.   General Negligence

Searile's action against Mercy Regional is also based upon general negligence. Louisiana utilizes a duty-risk analysis for general negligence claims, which requires Searile to prove the following:

> 1) that the defendant had a duty to meet a certain standard of conduct; 2) that the defendant's conduct failed to meet that standard; 3) that the substandard conduct was a cause-in-fact of the plaintiff's injuries; 4) that the substandard conduct was the legal cause of the plaintiff's injuries; and 5) that the plaintiff suffered actual damages as a result of the breach.

*Davis v. Burke's Outlet Stores, LLC*, 14-686, p. 6 (La.App. 3 Cir. 12/10/14), 155 So.3d 664, 669, *writ denied*, 15-59 (La. 4/2/15), 163 So.3d 794.

At the summary judgment hearing, the general negligence issue was addressed when Searile's counsel questioned the adequacy of the ICU nurse's monitoring of Searile. Searile's counsel argued that genuine issues of material fact remained regarding the timeliness of the nurse's response and whether the nurse could have discovered the ants more quickly. In response, the trial court noted that Searile had failed to provide evidence supporting the foregoing claims, but was instead relying upon argument. The trial court further stated:

> Where is a document, a deposition from this ICU nurse, an Answer to Interrogatory directed to the ICU nurse, depositions of the people that were on duty at that time, anything like that. Do you have anything like that to say I didn't go in, I missed this day, I should have gone every hour, I didn't go every hour, I could have gone every hour, I could have saw it but I wasn't there, we don't have that. All I got is the record and quite frankly the record is telling me from the flow sheet chart that you attached to your opposition. . . .

As the moving party, and with respect to the adequate monitoring issue, Mercy Regional attached Paul's affidavit. Therein, Paul discusses the nursing staff's response to the discovery of ants on Searile and in her bed. Since Mercy Regional would not be required to bear the burden of proof at trial, La.Code Civ.P. art. 966(D)(1) instructs that it was not required to "negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." Thereafter, Searile was required to produce factual support sufficient to establish that she could be able to satisfy her evidentiary burden of proof at trial. *Grogan*, 981 So.2d 162. We find that Searile lacked proof of those facts regarding the duty and breach issues of the larger general negligence claim.

Specifically, and despite the lapse of two years between the filing of suit and the filing of the instant Motion for Summary Judgment, Searile failed to produce affidavits or depositions that could have provided background information in this case. For example, there is no evidence regarding the nursing staff's actual conduct, the job duties assumed by the ICU nurses and employees, and whether those duties were breached. Further, as the trial court noted, Searile failed to provide evidence indicating how quickly the ant situation could have occurred so as to consider whether the nursing staff's hourly visits were adequate.

Despite the unusual nature of Searile's injuries, we also find that consideration of *res ipsa loquitur* is premature. *See Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654, 665-66 (La.1990) (on rehearing) (explaining that the doctrine of *res ipsa loquitur* "merely assists the plaintiff in presenting a

13

prima facie case of negligence when direct evidence is not available" and that "[i]n order to utilize the doctrine of *res ipsa loquitur* the plaintiff must establish a foundation of facts on which the doctrine may be applied."). *See also Cantuba v. Am. Bureau of Shipping*, 16-81, p. 1 (La. 3/24/16), 187 So.3d 995, 995 (wherein the supreme court reversed the trial court's granting of summary judgment in favor of the plaintiffs on the issue of liability and stated that: "Any determination of the applicability of *res ipsa loquitur* is premature until all evidence has been presented, at which time the district court can make a determination of whether it is appropriate to give an instruction which would allow the jury to infer the defendant's negligence."). Thus, after having conducted a de novo review, we conclude that Searile has failed to provide adequate evidence of the circumstances of this incident sufficient to survive the summary judgment analysis. We, therefore, affirm the trial court's granting of summary judgment in favor of Mercy Regional with regards to her general negligence claim.

## DECREE

The trial court's judgment is affirmed. All costs of this appeal are assessed to Plaintiff, Linda Marie Searile.

**AFFIRMED.**